**KLESTADT WINTERS JURELLER**
   **SOUTHARD & STEVENS, LLP**
570 Seventh Avenue, 17th Floor
New York, NY 10018
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Sean C. Southard
Maeghan J. McLoughlin

*Proposed Counsel to the Debtors and Debtors in*
   *possession*

**Hearing Date: August 26, 2015**
**Hearing Time: 1:00 p.m.**

**Objection Deadline: August 19, 2015**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| HYPNOTIC TAXI LLC, et al.,[1] | : | Case No. 15-43300 (CEC) |
| | : | |
| Debtors. | : | (Joint Administration Pending) |

-----------------------------------------------------------------x

### MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO OBTAIN SUBORDINATED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 362, 363 AND 364 OF THE BANKRUPTCY CODE

**TO THE HONORABLE CARLA E. CRAIG,**
**CHIEF UNITED STATES BANKRUPTCY JUDGE:**

     Hypnotic Taxi LLC, *et al.*, the debtors and debtors-in-possession (the "Debtors") in the

above-captioned Chapter 11 cases (the "Chapter 11 Cases"), by and through their proposed

counsel, Klestadt Winters Jureller Southard & Stevens, LLP, hereby submits this motion (the

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) Hypnotic Taxi LLC (6632)(Case No. 15-43300); (ii) Bombshell Taxi LLC (1282)(Case No. 15-43301); (iii) Bourbon Taxi LLC (7155)(Case No. 15-43302); (iv) Butterfly Taxi LLC (6992)(Case No. 15-43303); (v) Candy Apple Taxi LLC (0249)(Case No. 15-43304); (vi) Chianti Taxi, LLC (6799)(Case No. 15-43305); (vii) Chopard Taxi Inc. (0746)(Case No. 15-43306); (viii) Cupcake Taxi LLC (0324)(Case No. 15-43307); (ix) Dorit Transit Inc. (9129)(Case No. 15-43308); (x) France Taxi LLC, (9592)(Case No. 15-43309); (xi) Hennessey Taxi Inc. (4039)(Case No. 15-43310); (xii) Iceberg Taxi Inc. (5877)(Case No. 15-43311); (xiii) Marseille Taxi LLC (9890)(Case No. 15-43312); (xiv) Merlot Taxi LLC (7103)(Case No. 15-43313); (xv) Milkyway Cab Corp. (5061)(Case No 15-43314); (xvi) Palermo Taxi, Inc. (5956)(Case No. 15-43315); (xvii) Pinot Noir Taxi LLC (6725)(Case No. 15-43316); (xviii) Pointer Taxi LLC, (2323)(Case No. 15-43317); (xix) Pudding Taxi Inc. (0432)(Case No. 15-43318); (xx) Stoli Taxi Inc. (4079)(Case No. 15-43319); (xxi) Vodka Taxi LLC (4239)(Case No. 15-43320); and (xxii) VSOP Taxi Inc. (3909)(Case No. 15-43321).

"Motion") for entry of a final order in substantially the same form as that annexed hereto as Exhibit A (the "Final DIP Order") pursuant to sections 105(a), 362, 363 and 364 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-5 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules"), authorizing the Debtors to obtain subordinated post-petition financing in the aggregate principal amount of up to $350,000 (the "Postpetition Financing") substantially on the terms set forth in the Revolving Credit Agreement Providing for Subordinated Debtor-in-Possession Loans between the Debtor and Philadelphia Taxi Management LLC (the "Lender") annexed hereto as Exhibit B (as amended, supplemented, or otherwise modified and in effect from time to time, the "Credit Agreement"), together with any and all schedules thereto and other related documents, notes and agreements entered into in connection with or related to the Postpetition Financing, the "Loan Documents"), and granting related relief, and respectfully represents as follows:

## PRELIMINARY STATEMENT

The Debtors collectively own forty-six (46) New York City taxi medallions (the "Medallions") and related vehicles (the "Taxi Vehicles") and lease those Medallions and Taxi Vehicles to various affiliated management companies (collectively, the "Management Companies"), in exchange for lease payments equal to the amount of debt service to the Debtors' secured lender, Citibank, N.A. ("Citibank") and any other operating costs. The lease payments from the Management Companies may constitute Citibank's cash collateral (although the Debtors do not admit this). Citibank has not consented to the use of its cash collateral. Accordingly, the Debtors require another source of capital to fund the costs of their restructuring efforts, including professional fees, compensation to the Chief Restructuring Officer, United

States Trustee fees, and other normal costs and expenses. The Lender, an affiliate of the Debtors with common ownership, is willing to provide the unsecured Postpetition Financing to the Debtors, interest free and without fees, and subordinated to each and every other creditor of the Debtors. The Debtors cannot borrow on any better terms from any other source. Accordingly, for these reasons and those set forth below, the Debtors respectfully request that the Final DIP Order be entered and that they be authorized to obtain the Postpetition Financing pursuant to the terms of the Credit Agreement.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Administrative Order No. 264 titled "In the Matter of The Referral of Matters to the Bankruptcy Judges" of the United States District Court for the Eastern District of New York (Weinstein, C.J.), dated August 28, 1986, and Administrative Order No. 601 of the United States District Court for the Eastern District of New York (Amon, C.J.), dated December 5, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory predicates for the relief requested herein are sections 105, 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 4001(b) and 9014, and Local Rule 4001-5.

## BACKGROUND

4.    On July 22, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the or this "Court").

5.      The Debtors continue to manage their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date of the filing of this Motion, no trustee, examiner or committee has been requested or appointed.

6.      Additional background facts regarding the Debtors, their businesses and the facts and circumstances leading to the commencement of these Chapter 11 Cases are more fully described in the *Affidavit Of Evgeny Freidman, Managing Member Or Designated Officer For Each Of The Debtors, Pursuant To Local Bankruptcy Rule 1007-4* (the "Freidman Affidavit").

7.      Prior to the Petition date, the Debtors retained Joshua Rizak of The Rising Group Consulting, Inc. to perform the functions and hold the title of the Chief Restructuring Officer of the Debtors (the "CRO").  At or around the same time as this Motion is filed, the Debtors are filing a motion for authority to appoint and retain the CRO.  The CRO has taken over as the day-to-day manager of the Debtors, will be responsible for managing the Debtors as debtors in possession in these bankruptcy cases, monitoring and enforcing any relationship between the Debtors and Management Companies, assisting in the formulation, preparation and consummation of a plan of reorganization, and performing such other duties customary to a chief restructuring officer.

**A.  The Debtors' Prepetition Debt and Events Leading to Restructuring**

8.      The Debtors are either limited liability companies or corporations that each own either two or three Medallions issued by the New York City Taxi and Limousine Commission ("TLC") that permit taxi services to be performed by the Debtors.  The Debtors also own each of the Taxi Vehicles which are operated with the permission granted through their respective Medallions. The Debtors' primary assets are the forty-six (46) Medallions and the associated

Taxi Vehicles, as well as loan receivables due the Debtors by certain insiders and affiliates as set forth on the Debtors' tax returns.

9.      The operation of the Debtors' Medallions and related Taxi Vehicles is done through the following four non-debtor management companies (collectively, the "Management Companies"): (i) 28th Street Management, Inc. – 313 10th Avenue, New York, NY 10001 ("28th Street"), (ii) Downtown Taxi Management, LLC – 330 Butler Avenue, Brooklyn, NY ("Downtown"), (iii) Woodside Management, Inc. – 49-13 Roosevelt Avenue, Woodside NY, 11377 ("Woodside"), and (iv) Tunnel Taxi Management, LLC – 44-07 Vernon Blvd, LIC, NY 11101 ("Tunnel").  The Management Companies lease the Medallions and the related Taxi Vehicles directly from the respective Debtor and operate them.

10.      In January 2012, each of the Debtors became obligated to Citibank with respect to a separate loan made by Citibank to each of the Debtors (collectively, the "Citi Loans" and individually a "Citi Loan").  Each of the Debtors executed its own separate and distinct promissory note in the principal amount set forth below (collectively, the "Citi Notes" and individually a "Citi Note").  To secure each Citi Loan, each of the Debtors entered into its own separate and distinct security agreement (collectively, the "Security Agreements" and individually, the "Security Agreement") in which each of the Debtors pledged its own Medallions and substitutions for, additions to, proceeds and products thereof, etc. (collectively, the "Collateral") to secure each Debtor's own obligations under its single Citi Loan.  Pursuant to each of the Citi Notes, each of the Debtors was required to make monthly payments in the amount set forth below (the "Citi Loan Payment"), which included a payment towards the principal amount and interest.

11.     On or around May 8, 2014, Citibank sent the Debtors a letter providing notification that it would be terminating the cash management accounts effective May 23, 2014 (the "Termination Letter").

12.     On or about November 6, 2014, Citibank sent the Debtors a letter advising that Citibank would be terminating the entire banking relationship between Debtors, Mr. Freidman and Citibank (the "Banking Termination Letter") effective December 15, 2014.

13.     On or about March 6, 2015, the matter of *Citibank, N.A. v. Bombshell Taxi, LLC, et al.*, Index No. 650691-2015, was filed in the Supreme Court of the State of New York, New York County ("State Court"), by Citibank against various entities, including the Debtors (collectively the "Defendants"). In sum and substance, because the Citi Loans to eight (8) of the twenty-two (22) Debtors had matured on January 31, 2015 Citibank used the maturity of those eight Loans to declare a default under the Citi Loans to the other fourteen (14) Debtors even though those Loans were not in payment default and were not to mature until December 20, 2015.

14.     Following significant litigation between the Defendants and Citibank before the State Court and the Appellate Division, First Department (the "Appellate Court"), the Appellate Court found that Citibank may seize the Medallions unless the Debtors post a $50 million bond. The Debtors could not post the requisite bond and filed these Chapter 11 Cases prior to Citibank's seizure of the Medallions.

### B. The Proposed Postpetition Financing

15.     Subject to the approval of the Bankruptcy Court, the Debtors propose to enter into a debtor-in-possession financing facility to fund the administration of these Chapter 11 Cases post-petition. The Postpetition Financing will provide the Debtor with up to $350,000 in

liquidity to fund operations and the administration of these Chapter 11 Cases until the

Postpetition Financing's maturity date as provided for in the Loan Documents.

16.     The principal terms for the Loan Documents are as follows:[2]

| Borrowers: | The Debtors, Jointly and Severally |
|---|---|
| DIP Lender: | Philadelphia Taxi Management LLC |
| Relationship of Lender to Borrowers: | Evgeny Freidman is the direct or indirect owner of each of the Debtors and the Lender |
| Postpetition Financing Amount: | $350,000 in the aggregate |
| DIP Facility: | Lender will make revolving loans to Borrowers in the aggregate principal amount not to exceed $350,000, with each such revolving loan evidence by a promissory note issued by Borrowers and payable to the Lender. |
| Closing Date: | The date of entry of the Final DIP Order. |
| Maturity Date: | The Postpetition Financing shall mature on earlier of (a) July 22, 2016, or (b) the date a confirmed plan of reorganization becomes effective in accordance with its terms, or the occurrence of the "Effective Date" as defined in a confirmed plan of reorganization ("Plan's Effective Date"). |
| Subordination | The Revolving Loans shall be and are subordinated to the Allowed Claims of any and all other creditors or parties in interest asserting Claims against the Debtors and may not be repaid unless and until all such other Allowed Claims have been fully paid and satisfied. Without limiting the generality of the foregoing, in the event that the Borrowers are liquidated in accordance with Chapter 7 of the Bankruptcy Code or under any other process or proceeding, the Revolving Loans may not be repaid unless and until all such other Allowed Claims are fully paid and satisfied |
| Use of Proceeds: | The Borrowers shall utilize the proceeds of the Revolving Loans solely to pay the following expenses (collectively, the "Approved Disbursements" and individually, an "Approved Disbursement"): (a) for any ordinary course of business expenses incurred in operating the Borrowers' business, (b) to pay allowed Administration Claims, including payment of compensation to Chief Restructuring Officer, |

---

[2] This summary is qualified in its entirety by the actual terms of the Loan Documents.  Capitalized terms used in this summary have the meanings ascribed to them in the Credit Agreement.

| | |
|---|---|
| | payment of Professional Fees, and payment of any contractual obligations, all consistent with the Final DIP Order, (c) for payment of US Trustee Fees or any other post-petition payments required to be made by Borrowers. |
| **Reimbursement of Lender's Professionals:** | There are no fees associated with respect to the Postpetition Financing. |
| **Interest Rate:** | The Postpetition Financing is an interest free loan. |
| **Priorities:** | The Borrowers shall provide the lender with an Administrative Claim pursuant to Bankruptcy Code section 364(b) to secure payment of the Obligations in the Loan Documents.  The Lender's Administrative Claim will be subordinate to all other Claims. |
| **Carve-Out:** | The Loan Documents do not provide for any carve-out as the Postpetition Financing is not secured and is not impairing or affecting any other parties' collateral. |
| **Affirmative and Negative Covenants:** | There are no negative or affirmative covenants. |
| **Conditions Precedent:** | Customary for credit facilities of this nature, including the delivery of certain documents to Lender and the entry of the Final DIP Order. |
| **Modification of the Automatic Stay:** | The automatic stay in effect pursuant to section 362 of the Bankruptcy Code is modified to permit the parties to enter into the Loan Documents.  The automatic stay is not automatically modified or vacated to pursue collection remedies in the event of default. |
| **Reporting** | There are no reporting requirements |
| **Events of Default:** | Each of the following events shall be an "Event of Default" under the Credit Agreement: <br><br> (a) Borrowers shall fail to pay any principal of any Revolving Note when due in accordance with the terms thereof or hereof; or <br><br> (b) Proceeds of any Revolving Loan made hereunder are used to make a payment that is not and Approved Disbursement and/or is not in strict compliance with Section 2.8, unless agreed to by the Lender in writing or <br><br> (d) The occurrence of any additional "Event of Default" identified in the Final DIP Order not identified herein; or <br><br> (e) the dismissal of any, some or all of the Chapter 11 Cases, or the conversion of any, some or all of the Chapter 11 Cases from one under Chapter 11 to one under Chapter 7 of the |

|  | Bankruptcy Code, or Borrowers shall file a motion or other pleading seeking the dismissal of the any, some or all of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise; |
|  | (f) the appointment of a trustee in any, some, or all of the Chapter 11 Cases or the appointment of an examiner with expanded powers (powers beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code) to operate or manage the financial affairs, the business, or reorganization of any, some or all of the Borrowers under Bankruptcy Code section 1106(b); |
|  | (g) the entry of an order of a court of competent jurisdiction (1) reversing, staying, vacating or rescinding the Final DIP Order or it ceases to be in full force and effect or (2) amending, supplementing or otherwise modifying the Final DIP Order without the written consent of the Lender or the filing of a motion for reconsideration; |
|  | (h) Borrowers materially violate or breach the Final DIP Order or file any pleadings seeking, joining in, or otherwise consenting to any material violation or breach of the Final DIP Order; |
|  | (i) the entry of an order in the Chapter 11 Cases avoiding or requiring repayment of any portion of the payments made on account of the Obligations owing under this Agreement; |
|  | (j) the Bankruptcy Court shall enter an order or orders granting relief from or modifying the automatic stay applicable under Section 362 of the Bankruptcy Code to permit the Prepetition Lender or any one or more other creditors to execute upon, enforce or perfect a lien on any material asset of the Borrowers or that otherwise could reasonably be expected to have an adverse impact on the Borrowers' businesses; and |
|  | (k) commencement of any suit against the Lender that would in any way reduce, set off, or subordinate the Obligations under this Agreement. |

### C.  Compliance with Local Rule 4001-5

17.    Local Rule 4001-5 requires that certain provisions contained in the financing documents be highlighted, and that the Debtors must provide justification for the inclusion of such highlighted provision(s).  The Debtor submits that the Loan Documents do not include any of the provisions required to be highlighted under Local Rule 4001-5, as demonstrated below.

| Provision | Location |
|---|---|
| 4001-5(i): the absence of any carve-out for professional fees, or provisions that provide treatment for the professionals retained by the debtor that is different than that provided for the professionals retained by a creditors' committee with respect to a professional fee carve-out; | The Loan Documents do not provide for a carve-out. The Postpetition Financing is intended for the purpose of, among other things, paying professional fees. The professionals of the Debtors will be treated equally to any professionals retained by any creditors' committee. |
| 4001-5(ii): provisions that require the debtor to pay the secured creditor's expenses and attorneys' fees in connection with the proposed financing or use of cash collateral, without any notice or review by the Office of the United States trustee, creditors' committee (if formed), or the Court; or | The DIP Document do not require the Debtors to pay the Lender's expenses. Also, the Postpetition Financing is unsecured. |
| 4001-5(iii): provisions that exclude from a carve-out any request for professional fees related to the investigation of whether the secured creditor's lien is valid and/or properly perfected. | The Postpetition Financing is unsecured, and thus, the Loan Documents do not provide for a carve-out. Allowed professional fees will be paid to the extent Postpetition Financing is available regardless of the activities covered. |

## RELIEF REQUESTED AND BASIS FOR RELIEF

18.     This Motion requests entry of a Final Order, pursuant to sections 105(a), 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 4001 and 9014, and Local Rule 4001-5, authorizing the Debtors to obtain subordinated post-petition financing in the aggregate principal amount of up to $350,000 as provided for in the Loan Documents. The proposed Final DIP Order is attached hereto as Exhibit A.

### A.    Entry into the Loan Documents is in the Debtors' Sound Business Judgment

19.     Section 363(b) of the Bankruptcy Code permits a debtor to enter into transactions outside of the ordinary course of its business. That section provides that "[t]he trustee, after

notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

20.      Although section 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, the United States Court of Appeals for the Second Circuit, in applying this section, has required that it be based upon the sound business judgment of the debtor. Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (finding that "there must be some articulated business justification, other than appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business"); Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 466 (2d Cir. 2007) (citing Lionel); Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 145 (2d Cir. 1992) (finding that section 363(b) was applicable because sound business judgment supported the sale of assets); Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.), 430 B.R. 65, 83 (S.D.N.Y. 2010) ("The overriding consideration for approval of a Section 363 sale is whether a 'good business reason' has been articulated." (citations omitted)).

21.      The Loan Documents and use of the Postpetition Financing enable the Debtors to maintain normal business operations and make payments necessary for the success of their businesses.  The proceeds of the Postpetition Financing will be used to fund Administrative Claims for ordinary course of business expenses incurred in operating the Debtors' businesses, including compensation of the CRO, and payment of fees and costs of professionals employed by Debtors and any official committee, as approved by this Court.

22.     Without access to post-petition financing, the Debtors will struggle to operate their businesses thereby adversely affecting the chances of reorganization to the detriment of all creditor constituencies.   By obtaining the Postpetition Financing, the Debtors will be in a position to preserve the value of their assets during the chapter 11 process for the benefit of all creditors and work towards confirming a plan.  It is vital to the success of these Chapter 11 Cases and the confirmation of a plan that the Debtors obtain approval to access the Postpetition Financing, on a final basis, as contemplated by the Loan Documents.

23.     In addition, the Postpetition Financing will be subordinated to the allowed claims of all other creditors asserting claims against the Debtors and will not be repaid unless and until all other allowed claims have been fully satisfied.   The Debtors submit that entering into the Loan Documents and accessing the Postpetition Financing is a sound exercise of their business judgment that will enable it to operate during the pendency of these Chapter 11 Cases while preserving the claims of creditors.

**B.  The Lender is Entitled to the Protections of Section 364(b) of the Bankruptcy Code**

24.     Section 364(b) of the Bankruptcy Code provides, among other things, that a debtor may, outside of the ordinary course of its business, obtain unsecured credit or incur unsecured debt allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  11 U.S.C. § 364(b).  The Debtors propose to obtain credit under the Loan Documents by providing the Lender with an administrative claim for any outstanding obligations due it, provided that such administrative claim shall be subordinated to the repayment in full of all other allowed claims against the Debtors' estates.

25.     Courts grant a debtor's business judgment in choosing the means of incurring debt or obtaining post-petition financing, provided that that such debt or financing does not run afoul

of the provisions of and policies underlying the Bankruptcy Code.  See, e.g., In re Barbara K. Enters., Inc., Case No. 08-11474, 2008 WL 2439649 at *14 (Bankr. S.D.N.Y. June 16, 2008); In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party in interest"); see also Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co., Inc.), 789 F.2d 1085, 1088 (4th Cir. 1986); In re Berry Good, LLC, 400 B.R. 741, 747 (Bankr. D. Ariz. 2008).

26.    The Debtors respectfully submit that they could not secure post-petition financing on more favorable terms than those negotiated to in the Loan Documents.  As stated in the Loan Documents, the proposed borrowing carries no fees, no interest and no expense reimbursements, and is subordinated in repayment to any and all other claims asserted against the Debtors.  The Debtors require the Postpetition Financing to satisfy its postpetition needs and the Postpetition Financing is the only sufficient source of credit at this time.

27.    The loans provided under Postpetition Financing will enable the Debtors to continue to operate their businesses in the ordinary course and in an orderly and reasonable manner to preserve and enhance the value of its estate for the benefit of all parties in interest pending confirmation of a plan under section 1129 of the Bankruptcy Code.  The availability of credit under the Postpetition Financing will also provide confidence to the Debtors' creditors and counterparties that will enable and encourage them to continue their relationships with the Debtors.

28.     In addition, the Debtors need working capital financing to make the Approved Disbursements described above, which include making ordinary business payments and making payments to the CRO and other professionals.  The Lender was the only party willing to extend credit and make loans to fund the administration of the bankruptcy case so as to preserve value for creditors on such favorable terms.  In short, the Debtors have determined that a consensual Postpetition Financing with the proposed Lender will save time and money at the outset of these Chapter 11 Cases, thereby allowing the Debtors to preserve value and focus on the reorganization of their businesses.

29.     Consummation of the Loan Documents is in the best interest of the Debtors' estates, claimants, and creditors, and all other parties-in-interest in these Chapter 11 Cases and is consistent with the Debtors' exercise of its business judgment and fiduciary duty.  Accordingly, the Lender and all obligations incurred under the Loan Documents should be accorded the benefits of section 364(e) of the Bankruptcy Code.  11 U.S.C. § 364(e).

### C.  The Automatic Stay Should be Modified on a Limited Basis

30.     The relief requested herein contemplates modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Lenders to implement the terms of the Final DIP Order and Credit Agreement.  Stay modifications of this kind are ordinary and standard features of post-petition debtor financing facilities and, in the Debtors' business judgment, are reasonable and fair under the present circumstances.  Accordingly, in conjunction with approval of the Loan Documents and granting of the relief requested in this Motion, the Debtor respectfully requests that the Court modify the automatic stay as set forth herein.

### NOTICE

31.    The Debtors intend to serve this Motion on: (i) the Office of the United States Trustee for the Eastern District of New York; (ii) the Debtors' consolidated twenty (20) largest unsecured creditors; (iii) the Debtors' five (5) largest secured creditors, (iv) the Lender; (v) counsel to Citibank; (vi) any other party(ies) with liens of record on assets or property of Debtors' estates as of the Petition Date, if any; and (vii) all other parties requesting notice pursuant to Bankruptcy Rule 2002.

## NO PRIOR REQUEST

32.    No previous motion for the relief sought herein has been made to this or any other court.

*[Continued on next page]*

**WHEREFORE**, the Debtors respectfully request that the Court enter the Final DIP Order attached hereto as <u>Exhibit A</u> authorizing the Debtors to obtain subordinated post-petition financing and granting such other and further relief as the Court deems appropriate.

Dated:   New York, New York
       July 31, 2015

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By:   */s/ Fred Stevens*
      Fred Stevens
      Sean C. Southard
      Maeghan J. McLoughlin
      570 Seventh Ave., 17th Floor
      New York, New York 10018
      Tel: (212) 972-3000
      Fax: (212) 972-2245
      Email: fstevens@klestadt.com
             ssouthard@klestadt.com

      *Proposed Attorneys to the Debtors and
        Debtors in possession*