| | |
|---|---|
| **KLESTADT WINTERS JURELLER** | **Hearing Date: October 21, 2015** |
|   **SOUTHARD & STEVENS, LLP** | **Hearing Time: 3:00 p.m.** |
| 570 Seventh Avenue, 17th Floor | |
| New York, NY 10018 | **Objection Deadline:** |
| Telephone: (212) 972-3000 |   **October 14, 2015** |
| Facsimile: (212) 972-2245 | |
| Fred Stevens | |
| Maeghan J. McLoughlin | |

*Counsel to the Debtors and Debtors in possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                         :          Chapter 11

HYPNOTIC TAXI LLC, et al.,[1]          :          Case No. 15-43300 (CEC)

                      Debtors.          :          (Jointly Administered)
------------------------------------------------------------------x

### DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO 11 U.S.C. §§ 105(A) AND 363(B), AUTHORIZING AND APPROVING THE DEBTORS' CONTINUED BUSINESS RELATIONSHIP WITH MANAGEMENT COMPANIES

**TO THE HONORABLE CARLA E. CRAIG,**
**CHIEF UNITED STATES BANKRUPTCY JUDGE:**

       The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their proposed counsel, Klestadt Winters Jureller Southard & Stevens, LLP, submit this motion (the "Motion") for entry of an order (the "Proposed Order") in the form attached hereto as Exhibit A authorizing and approving the continuation of the Debtors' current business

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) Hypnotic Taxi LLC (6632)(Case No. 15-43300); (ii) Bombshell Taxi LLC (1282)(Case No. 15-43301); (iii) Bourbon Taxi LLC (7155)(Case No. 15-43302); (iv) Butterfly Taxi LLC (6992)(Case No. 15-43303); (v) Candy Apple Taxi LLC (0249)(Case No. 15-43304); (vi) Chianti Taxi, LLC (6799)(Case No. 15-43305); (vii) Chopard Taxi Inc. (0746)(Case No. 15-43306); (viii) Cupcake Taxi LLC (0324)(Case No. 15-43307); (ix) Dorit Transit Inc. (9129)(Case No. 15-43308); (x) France Taxi LLC, (9592)(Case No. 15-43309); (xi) Hennessey Taxi Inc. (4039)(Case No. 15-43310); (xii) Iceberg Taxi Inc. (5877)(Case No. 15-43311); (xiii) Marseille Taxi LLC (9890)(Case No. 15-43312); (xiv) Merlot Taxi LLC (7103)(Case No. 15-43313); (xv) Milkyway Cab Corp. (5061)(Case No 15-43314); (xvi) Palermo Taxi, Inc. (5956)(Case No. 15-43315); (xvii) Pinot Noir Taxi LLC (6725)(Case No. 15-43316); (xviii) Pointer Taxi LLC (2323)(Case No. 15-43317); (xix) Pudding Taxi Inc. (0432)(Case No. 15-43318); (xx) Stoli Taxi Inc. (4079)(Case No. 15-43319); (xxi) Vodka Taxi LLC (4239)(Case No. 15-43320); and (xxii) VSOP Taxi Inc. (3909)(Case No. 15-43321).

relationship with Management Companies (defined below). In support of this Motion, the Debtors submit the *Declaration Of Joshua Rizack, Debtors' Chief Restructuring Officer, (I) In Support Of Debtors' Motion To Continue Its Business Relationship With Affiliated Management Companies; And (II) Providing Additional Information Regarding Debtors' (A) Relationship With Affiliated Management Companies; And (B) Insurance And Bonding Programs* (the "Rizack Declaration"), a copy of which is annexed hereto as Exhibit B. In further support of the Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

The Debtors collectively own forty-six (46) New York City taxi medallions (the "Medallions") and related vehicles (the "Taxi Vehicles") and lease those Medallions and Taxi Vehicles to various affiliated management companies (collectively, the "Management Companies"), in exchange for lease payments (the "Lease Payments") equal to the amount of the historical debt service to the Debtors' secured lender, Citibank, N.A. ("Citibank"). Under the arrangement with the Management Companies, the Management Companies receive the gross revenues from the operation of the Taxi Vehicles, and pay therefrom the expenses associated with the operation of such Taxi Vehicles, including all insurance/bonding premiums, liability for personal bodily injury up to applicable insurance limits, property damage and other tort claims up to the minimum coverage amounts required by the TLC, vehicle maintenance and repairs, and fuel, as well as overhead expenses.

Upon his employment, Joshua Rizack, the Debtors' Chief Restructuring Officer, undertook a significant investigation to determine: (i) if the Lease Payments were in an appropriate amount when compared to the market; and (ii) whether the Lease Payments represented fair value such that the Management Companies were not taking advantage of the

Debtors under the arrangement. Upon a significant investigation, as set forth in detail in the Rizack Declaration, the CRO has determined that: (i) the Lease Payments are significantly above market in the Debtors' favor; (ii) the lease relationship between the Management Companies and the Debtors is typical and standard to the industry; and (iii) the Management Companies do not make any profit from their relationship with the Debtors.

For these reasons and those detailed below, the Debtors respectfully request that they be allowed to continue their relationship with the Management Companies.

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Administrative Order No. 264 titled "In the Matter of The Referral of Matters to the Bankruptcy Judges" of the United States District Court for the Eastern District of New York (Weinstein, C.J.), dated August 28, 1986, and Administrative Order No. 601 of the United States District Court for the Eastern District of New York (Amon, C.J.), dated December 5, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue of this proceeding and this application is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code").

## INTRODUCTION

4. On July 22, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases") in the United States Bankruptcy Court for the Eastern District of New York (the or this

"Court"). On August 10, 2015, the Court entered an order directing the joint administration of the Debtors' cases [Docket No. 26].

5. The Debtors continue to manage their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date of the filing of this Motion, no trustee or examiner has been requested or appointed.

6. On July 31, 2015, the Debtors submitted the application (the "CRO Application") for entry of an order (i) authorizing The Rising Group Consulting Inc. to provide the Debtors with a Chief Restructuring Officer and additional personnel, and (ii) designating Joshua Rizack as CRO to the Debtors effective as of the Petition Date. The CRO Application was granted on an interim basis by order dated September 18, 2015 [Docket No. 62].

7. On September 1, 2015, the United States Trustee appointed an official committee of unsecured creditors (the "Committee") [Docket No. 53]. The members of the Committee are Juan Abreu, American Transit Insurance Company and Jeremy Joseph.

## BACKGROUND

8. The Debtors are either limited liability companies or corporations organized under the laws of the State of New York. The Debtors maintain an office at 330 Butler Street, Brooklyn, New York 11217.

9. The Debtors each own either two or three New York City Medallions issued by the New York City Taxi and Limousine Commission ("TLC") and related Taxi Vehicles. The Debtors collectively own forty-six (46) Medallions and Taxi Vehicles.

10. Evgeny Freidman ("Freidman") is the sole and managing member of the limited liability company Debtors or president and sole shareholder of the corporate Debtors.

11. The operation of the Debtors' Medallions and related Taxi Vehicles is done through the following four non-debtor Management Companies: (i) 28th Street Management, Inc. – 313 10th Avenue, New York, NY 10001 ("28th Street"), (ii) Downtown Taxi Management, LLC – 330 Butler Avenue, Brooklyn, NY, ("Downtown"), (iii) Woodside Management, Inc. ("Woodside") – 49-13 Roosevelt Avenue, Woodside, NY 11377, and (iv) Tunnel Taxi Management, LLC ("Tunnel") – 44-07 Vernon Blvd, LIC, NY 11101.

12. Prior to the Petition Date, in January 2012, each of the Debtors became obligated to Citibank with respect to a separate loan made by Citibank to each of the Debtors (collectively, the "Citi Loans" and individually a "Citi Loan"). Each of the Debtors executed its own separate and distinct promissory note in the principal amount set forth in the Debtors' schedules. Pursuant to each of the notes, each of the Debtors was required to make monthly payments, which included a payment towards the principal amount and interest.

13. The Management Companies lease the Medallions and the related Taxi Vehicles directly from the respective Debtor and operate them. See Rizack Declaration, ¶17.

14. The Debtors are compensated for this leasing arrangement by way of the lease payments (the "Lease Payments") from the Management Companies. Id.

15. The Management Companies' monthly base lease obligation to the Debtors is equal to the Debtors' historical monthly debt service on the Citi Loans. In the past, the Management Companies made these Lease Payments——in the amount of the debt service— directly to Citibank instead of to the Debtors. Id.

16. The Management Companies receive the gross revenues from the operation of the Taxi Vehicles, and pay therefrom the expenses associated with the operation of such Taxi Vehicles, including all insurance/bonding coverage, liability for personal bodily injury up to

applicable insurance limits, property damage and other tort claims up to the minimum coverage amounts required by the TLC, vehicle maintenance and repairs, and fuel, as well as overheard expenses.  See Rizack Declaration, ¶18.

17. The Debtors' CRO has investigated the norms and standards in the taxi industry and has verified that a medallion owner's leasing of its medallions to a management company who then operates the medallions and associated vehicles is the standard business practice in the taxi industry.  See Rizack Declaration, ¶22.

18. The reason for the leasing relationship in the taxi industry is that it is cost prohibitive for a medallion owner to operate the medallions and the taxi vehicles.  Medallion owners typically do not own real estate to house the taxi vehicles while they are not in use. Similarly, medallion owners do not have the employees or systems needed to: (i) manage the drivers and monitor their activities; (ii) process all receipts and make disbursements on account of each medallion; (iii) maintain the vehicles and see to repairs; (iv) ensure that all payments are made; (v) keep records of activity; (vi) ensure that the medallions and related vehicles are operated in compliance with TLC regulations; and (vii) to handle all of the daily aspects of operating a taxi in New York City.  Therefore, most medallion owners, just like the Debtors, rely upon a management company to provide the resources necessary to operate the medallion and taxi vehicles and receive from the management company a lease payment in exchange for operating the medallions.  See Rizack Declaration, ¶23.

19. Under the Debtors' current arrangement with the Management Companies, the Debtors receive approximately $3,473.96 per month per Medallion, for a total Lease Payment of $159,802 per month for the 46 Medallions.  See Rizack Declaration, ¶24.

20. The CRO contacted unrelated taxi management companies and determined that the interested management companies would pay the Debtors between $2,400 and $2,600 per month per Medallion depending on the associated Taxi Vehicle. See Rizack Declaration, ¶25–26.

21. The Debtors intend to continue their business relationship with the Management Companies, and for the Management Companies to make the Lease Payments directly to Citibank pursuant to the terms of a Stipulation and Proposed Order Concerning Continued Use of Cash Collateral with Citibank (the "Citi Stipulation") [Docket No. 54] (Court approval pending at the time of filing this Motion) and a revised and final Citi Stipulation that is currently being negotiated. Upon agreement with Citibank, the relief sought by this Motion is with a full reservation of rights and without any acknowledgement by Citibank regarding the true nature of the Debtors' relationship to the Management Companies.

22. Pursuant to the Citi Stipulation and subject to Court approval, the Debtors and Citibank agreed, among other things, that on or before the fifth (5th) day of each calendar month commencing on October 5, 2015, the Management Companies shall remit to Citibank the sum of $159,802, which amount represents the Lease Payment due the Debtors from the Management Companies. See Citi Stipulation, ¶2.

## ARGUMENT

### A. The Debtors' Continued Business Relationship With The Management Companies Is Within The Debtors' Sound Business Judgment And Should Be Approved

23. Section 363(b) of the Bankruptcy Code permits a debtor to enter into transactions outside of the ordinary course of its business. That section provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 does not set forth a

standard for determining when it is appropriate for a court to authorize the use or disposition of a debtor's assets, the United States Court of Appeals for the Second Circuit, in applying this section, has required that it be based upon the sound business judgment of the debtor. Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (finding that "there must be some articulated business justification, other than appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business"); Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 466 (2d Cir. 2007) (citing Lionel); Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 145 (2d Cir. 1992) (finding that section 363(b) was applicable because sound business judgment supported the sale of assets); Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.), 430 B.R. 65, 83 (S.D.N.Y. 2010) ("The overriding consideration for approval of a Section 363 sale is whether a 'good business reason' has been articulated." (citations omitted)).

24.   Section 363(c) of the Bankruptcy Code permits a debtor operating under section 1108 of the Bankruptcy Code to enter into transactions and use property of the estate in the ordinary course of business without notice or a hearing. 11 U.S.C. § 363(c). The Debtors submit that the leasing arrangement with the Management Company is in the ordinary course of business in the taxi industry. However, out of an abundance of caution, and to alleviate any concerns or misgivings regarding the business relationship with the Debtors, the Debtors are seeking Court authorization to continue their business relationship with the Management Companies pursuant to section 363(b).

25.   The Debtors are exercising sound business judgment by continuing their business relationship with the Management Companies. As set forth above and in the Rizack Declaration,

the Debtors' Lease Payments from the Management Companies are approximately $3,473.96 per Medallion per month.  In the course of his investigation, the CRO contacted approximately thirty (30) unrelated taxi medallion management companies and registered brokers to determine the amount they would pay the Debtors for entering into a leasing relationship.  The majority of the unrelated management companies were not interested in taking on new medallions and the interested management companies offered between $2,400 and $2,600 per month per Medallion, or approximately thirty (30%) percent less than the Management Companies are paying.  See Rizack Declaration, ¶¶25–27.

26.     Therefore, the Lease Payments from the Management Companies are over-market and extremely beneficial to the Debtors.

27.     In addition to being economically advantageous to the Debtors, the relationship between the Debtors and the Management Companies is standard in the industry and it would be costly and burdensome to modify or unnecessarily complicate the relationship.  Any modification would likely impose more expense and burden on the Debtors and neither the Debtors nor the Management Companies would benefit.

28.     Further, the CRO, with the cooperation of the Management Companies personnel and Management Companies' CPA, undertook an independent investigation to determine the extent of the Management Companies' profits, if any, and whether the Debtors should receive additional funds under the leasing arranging with the Management Companies.  As described in thorough detail in the Rizack Declaration, the Management Companies do not make a profit from the leasing relationship and in fact, the CRO estimates that the Management Companies lose as much as $8,404 annually on each of the Debtors' Medallions and Taxi Vehicles.

Accordingly, the Debtors submit that they are more than adequately compensated by the Lease Payments in exchange for leasing the Medallions. See Rizack Declaration, ¶¶30 to 39.

29. Therefore, the Debtors assert that the lease relationship with the Management Companies is beneficial to the Debtors, their creditors and the estates, and the continued business relationship with the Management Companies should be authorized and approved.

### B. Notice

30. The Debtors intend to serve this Motion on (a) the United States Trustee for the Eastern District of New York, (b) counsel to Citibank, (c) the Debtors' twenty (20) largest unsecured creditors; (d) counsel to the Committee (or each member of the Committee if counsel is not selected); (e) all parties that have filed a notice of appearance in the Debtor's case; and (f) all other parties entitled to notice pursuant to Bankruptcy Rule 2002(a).

### C. No Prior Relief

31. No previous application for the relief requested herein has been made to this or any other court.

*[Continued on next page]*

**WHEREFORE**, the Debtors request entry of an order substantially in the form annexed hereto as Exhibit A approving and authorizing the Debtors continued business relationship with the Management Companies.

Dated: New York, New York
September 25, 2015

                **KLESTADT WINTERS JURELLER
                SOUTHARD & STEVENS, LLP**

By: */s/ Fred Stevens*
Fred Stevens
Maeghan J. McLoughlin
570 Seventh Ave., 17th Floor
New York, New York 10018
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: fstevens@klestadt.com
       mmcloughlin@klestadt.com

*Attorneys to the Debtors and Debtors in possession*