**KLESTADT WINTERS JURELLER**  **Hearing Date: November 18, 2015**
  **SOUTHARD & STEVENS, LLP**  **Hearing Time: 4:00 p.m.**
200 West 41st St., 17th Floor
New York, NY 10036-7203  **Objection Deadline:**
Telephone: (212) 972-3000     **November 11, 2015**
Facsimile: (212) 972-2245
Fred Stevens
Maeghan J. McLoughlin

*Counsel to the Debtors and Debtors in possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
| | |
|---|---|
| In re : | Chapter 11 |
| : | |
| HYPNOTIC TAXI LLC, et al.,[1] : | Case No. 15-43300 (CEC) |
| : | |
| Debtors. : | (Jointly Administered) |

-----------------------------------------------------------------x

### DEBTORS' MOTION FOR AN ORDER EXTENDING EXCLUSIVE PERIODS DURING WHICH THE DEBTORS MAY FILE A PLAN OR PLANS AND SOLICIT ACCEPTANCES THERETO

**TO THE HONORABLE CARLA E. CRAIG,**
**CHIEF UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their counsel, Klestadt Winters Jureller Southard & Stevens, LLP, submit this motion (the "Motion") for entry of an order extending the exclusive periods during which the Debtors may file a plan and solicit acceptances thereto pursuant to sections 105(a) and 1121(d)

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) Hypnotic Taxi LLC (6632)(Case No. 15-43300); (ii) Bombshell Taxi LLC (1282)(Case No. 15-43301); (iii) Bourbon Taxi LLC (7155)(Case No. 15-43302); (iv) Butterfly Taxi LLC (6992)(Case No. 15-43303); (v) Candy Apple Taxi LLC (0249)(Case No. 15-43304); (vi) Chianti Taxi, LLC (6799)(Case No. 15-43305); (vii) Chopard Taxi Inc. (0746)(Case No. 15-43306); (viii) Cupcake Taxi LLC (0324)(Case No. 15-43307); (ix) Dorit Transit Inc. (9129)(Case No. 15-43308); (x) France Taxi LLC, (9592)(Case No. 15-43309); (xi) Hennessey Taxi Inc. (4039)(Case No. 15-43310); (xii) Iceberg Taxi Inc. (5877)(Case No. 15-43311); (xiii) Marseille Taxi LLC (9890)(Case No. 15-43312); (xiv) Merlot Taxi LLC (7103)(Case No. 15-43313); (xv) Milkyway Cab Corp. (5061)(Case No 15-43314); (xvi) Palermo Taxi, Inc. (5956)(Case No. 15-43315); (xvii) Pinot Noir Taxi LLC (6725)(Case No. 15-43316); (xviii) Pointer Taxi LLC (2323)(Case No. 15-43317); (xix) Pudding Taxi Inc. (0432)(Case No. 15-43318); (xx) Stoli Taxi Inc. (4079)(Case No. 15-43319); (xxi) Vodka Taxi LLC (4239)(Case No. 15-43320); and (xxii) VSOP Taxi Inc. (3909)(Case No. 15-43321).

of title 11 of the United States Code (the "Bankruptcy Code"), and respectfully set forth as follows:

## PRELIMINARY STATEMENT

The Debtors' exclusive periods to file a chapter 11 plan and seek acceptances and rejections thereof expires on November 19, 2015 and January 18, 2016, respectively. By this Motion, the Debtors seek a one hundred and twenty (120) day extension of these exclusive periods in order to afford an ample opportunity for the filing and reviewing of claims against the twenty-two Debtors (the current claim bar dates are December 21, 2015 for all creditors except governmental units which have until January 18, 2016), and to negotiate the terms of a plan with the Official Committee of Unsecured Creditors (the "Committee") which just recently retained counsel.

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Administrative Order No. 264 titled "In the Matter of The Referral of Matters to the Bankruptcy Judges" of the United States District Court for the Eastern District of New York (Weinstein, C.J.), dated August 28, 1986, and Administrative Order No. 601 of the United States District Court for the Eastern District of New York (Amon, C.J.), dated December 5, 2012.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein is 11 U.S.C. §§ 105(a) and 1121(d) of the Bankruptcy Code.

**INTRODUCTION**

5.      On July 22, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases") in the United States Bankruptcy Court for the Eastern District of New York (the or this "Court").  On August 10, 2015, the Court entered an order directing the joint administration of the Debtors' cases [Docket No. 26].

6.      The Debtors continue to manage their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date of the filing of this Motion, no trustee or examiner has been requested or appointed.

7.      On July 31, 2015, the Debtors submitted the application (the "CRO Application") for entry of an order (i) authorizing The Rising Group Consulting Inc. to provide the Debtors with a Chief Restructuring Officer and additional personnel, and (ii) designating Joshua Rizack as CRO to the Debtors effective as of the Petition Date.  The CRO Application was granted on an interim basis by order dated September 18, 2015 [Docket No. 62] and on a final basis subject to the Court's entry of an order.

8.      On October 23, 2015, the Court entered an order (the "Bar Date Order") [Docket No. 93] establishing December 21, 2015, and January 18, 2016 as the general bar date and governmental bar date, respectively.

9.      On September 24, 2015, the United States Trustee filed an amended appointment of an official committee of unsecured creditors (the "Committee") [Docket No. 64].  The members of the Committee are Hereford Insurance Company, American Transit Insurance Company, and Jeremy Joseph.

10. On October 7, 2015, the Committee selected White and Williams LLP ("W&W") as its counsel. W&W submitted its application for retention on October 28, 2015, which is pending Court approval.

## BACKGROUND

11. The Debtors are either limited liability companies or corporations organized under the laws of the State of New York. The Debtors maintain an office at 330 Butler Street, Brooklyn, New York 11217.

12. The Debtors each own either two or three New York City Medallions issued by the New York City Taxi and Limousine Commission ("TLC") and related Taxi Vehicles. The Debtors collectively own forty-six (46) Medallions and Taxi Vehicles.

13. Evgeny Freidman ("Freidman") is the sole and managing member of the limited liability company Debtors or president and sole shareholder of the corporate Debtors.

14. Prior to the Petition Date, in January 2012, each of the Debtors became obligated to Citibank, N.A. ("Citibank") with respect to a separate loan made by Citibank to each of the Debtors (collectively, the "Citi Loans" and individually a "Citi Loan"). Each of the Debtors executed its own separate and distinct promissory note in the principal amount set forth in the Debtors' schedules. Pursuant to each of the notes, each of the Debtors was required to make monthly payments, which included a payment towards the principal amount and interest.

15. The operation of the Debtors' Medallions and related Taxi Vehicles is done through the following four non-debtor Management Companies: (i) 28th Street Management, Inc. – 313 10th Avenue, New York, NY 10001 ("28th Street"), (ii) Downtown Taxi Management, LLC – 330 Butler Avenue, Brooklyn, NY, ("Downtown"), (iii) Woodside Management, Inc.

("Woodside") – 49-13 Roosevelt Avenue, Woodside, NY 11377, and (iv) Tunnel Taxi Management, LLC ("Tunnel") – 44-07 Vernon Blvd, LIC, NY 11101.

16. The Management Companies lease the Medallions and the related Taxi Vehicles directly from the respective Debtor and operate them. The Debtors are compensated for this leasing arrangement by way of the lease payments (the "Lease Payments") from the Management Companies. The Management Companies' monthly base lease obligation to the Debtors is equal to the Debtors' historical monthly debt service on the Citi Loans. In the past, the Management Companies made these Lease Payments——in the amount of the debt service—directly to Citibank instead of to the Debtors.

17. On August 10, 2015, Citibank filed, by order to show cause, an application in support of an order directing turnover and authorizing Bankruptcy Rule 2004 examinations (the "Citi Motion") [Docket No. 25]. Following objections by the Debtors, the Management Companies, and certain creditors, and a hearing on the Citi Motion, the Court granted the Citi Motion in part and directed the Debtors to turn over certain documents to Citi and to make Mr. Friedman available for a deposition (the "Citi Order") [Docket No. 41]. Following entry of the Citi Order, the Debtors, Management Companies, Mr. Friedman, and Citi engaged in extensive negotiations to arrive at a stipulation whereby the Debtors agreed to make certain payments to Citi (the "Initial Citi Stipulation"), which was "so ordered" by this Court on September 21, 2015 [Docket No. 63].

18. On October 22, 2015, the Debtors submitted a final stipulation (the "Final Citi Stipulation") which fully resolved the Citi Motion with all parties reserving all rights to raise any issues. The Final Citi Stipulation was "So Ordered" by the Court on October 26, 2015 [Docket No. 94].

19. The Debtors intend to continue their business relationship with the Management Companies, and for the Management Companies to make the Lease Payments directly to Citibank pursuant to the terms of the Citi Stipulation.

20. In furtherance of the Debtors' intentions, on September 25, 2015, the Debtors filed a motion to continue this business relationship with the Management Companies (the "Management Company Motion") [Docket No. 67]. On October 14, 2015, the UST filed its objection to the Management Company Motion (the "UST Objection"). On October 16, 2015, creditor Josette Marie Tenas-Reynard ("Reynard") filed her amended objection to the Management Company Motion (the "Tenas-Reynard Objection"). There is a hearing on the Management Company Motion, UST Objection and Tenas-Reynard Objection currently scheduled for November 18, 2015.

## RELIEF REQUESTED

21. By this Motion, the Debtors seek entry of an order, substantially in the form annexed hereto as Exhibit A, extending the 120-day period during which only the Debtors may file a plan or plans of reorganization and the 180-day period during which the Debtors may solicit acceptances to any such plan or plans (collectively, the "Exclusive Periods"), each by 120 days, through and including March 18, 2016, and May 17, 2016, respectively, pursuant to section 1121(d) of the Bankruptcy Code. Unless extended the Debtors' initial exclusive filing period will expire on November 19, 2015, and the Debtors' initial exclusive solicitation period will expire on January 18, 2016.

## BASIS FOR RELIEF REQUESTED

22. Section 1121 of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a Chapter 11 case and entry of an order for relief during which a

debtor has the exclusive right to file a plan. See 11 U.S.C. § 1121(b). If a plan is filed by the debtor within that 120-day period, no other party may file a plan for an additional 60 days (i.e., a total of 180 days from the filing date) so that the debtor has sufficient time to seek acceptances of its plan. See 11 U.S.C. § 1121(c)(3). Section 1121(d) of the Bankruptcy Code provides, however, that the court may, for cause shown, increase the 120-day and 180-day exclusive periods. In re Adelphia Communs. Corp., 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006); In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 407 (E.D.N.Y. 1989); In re United Press Int'l, Inc., 60 B.R. 265, 270 (Bankr. D. D.C. 1986).

23. Section 1121(d)(1) of the Bankruptcy Code provides:

> Subject to paragraph (2), on request of a party of interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d)(1).

24. Whether "cause" exists to extend a debtor's exclusive periods to file and solicit acceptances of a plan is a decision committed to the sound discretion of the bankruptcy court based upon the facts and circumstances of each particular case. See Adelphia, 336 B.R. at 674; Gibson, 101 B.R. at 409; see also In re Texaco, Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y 1987). Congress intended to give the bankruptcy court maximum flexibility to make such a determination. Gibson, 101 B.R. at 409 (citing In re Public Service Company of New Hampshire, 88 B.R. 521, 534 (Bankr. D. New Hampshire 1988)); In re Amko Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996).

25. In determining whether cause exists to extend a debtor's exclusive periods, courts examine several factors, including the following:

7

      a. the size and complexity of the case;

      b. the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan;

      c. the existence of good faith progress towards reorganization;

      d. whether the debtor is paying its bills as they come due;

      e. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

      f. whether the debtor has made progress in negotiations with its creditors;

      g. the amount of time which has elapsed in the case;

      h. whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

      i. whether an unresolved contingency exists.

Adelphia, 336 B.R. at 674; In re Crescent Mfg. Co., 122 B.R. 979, 982 (Bankr. N.D. Ohio 1990) (citing Texaco, 76 B.R. 322); In re Dow Corning Corp., 208 B.R. 661, 665 (Bankr. D. Mich. 1997); In re Express One Int'l, 194 B.R. 98, 100 (Bankr. D. Tex. 1996).

    26. When evaluating these factors, the goal is to determine whether a debtor has had a reasonable opportunity to negotiate an acceptable plan with various interested parties and to prepare adequate financial and non-financial information concerning the ramifications of any proposed plan for disclosure to creditors. See, e.g., In re McLean Indus., Inc., 87 B.R. 830, 833-34 (Bankr. S.D.N.Y. 1987); Texaco, 76 B.R. at 326.

    27. Courts have emphasized that it is not simply a question of adding up the number of factors which weigh for and against an extension or deduction of exclusivity. It is within the discretion of the Bankruptcy Court to decide which factors are relevant and give the appropriate weight to each. See In re Hoffinger Industries, Inc., 292 B.R. 639, 644 (8th Cir. BAP 2003); In re Situation Mgmt. Sys., Inc., 252 B.R. 859 (Bankr. D. Mass. 1998). See also In re Dow Corning

Corp., 208 B.R. 661, 669 (Bankr. E.D. Mich. 1997) (no one factor is dispositive and the Court is not restricted to counting factors).

28.  Courts in this Circuit have granted the same or substantially similar relief to that requested in this Motion. See, e.g., In re Interfaith Medical Center, Inc., Case No. 12-48226 (CEC) (Bankr. E.D.N.Y. Mar 22, 2013) at Docket No. 349; In re dELiA*s, Inc., et al., Case No. 14-23678 (RDD) (Bankr. S.D.N.Y. Mar. 11, 2015) at Docket No. 333; In re Eastman Kodak Company, et al., Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. July 18, 2013) at Docket No. 4328; and In re Flat Out Crazy, LLC et al, Case No. 13-22094 (RDD) (Bankr. S.D.N.Y. July 12, 2013) at Docket No. 424.

29.  The Debtors respectfully submit that "cause" exists for the Court to extend the Exclusive Periods requested in this Motion. Specifically, the following factors all weigh in favor of granting the requested extensions:

a) Only three months have passed since the Debtors filed for protection under Chapter 11.

b) The first two (of three) months of these cases were dominated by the Citi Motion and all efforts were directed at resolving the Citi Motion and addressing the concerns raised by this Court since the inception of these cases. The Debtors, Citi, Mr. Freidman, and the Management Companies spent significant time negotiating the terms of the Initial Citi Stipulation and Final Citi Stipulation and arriving at an arrangement that satisfied Citi's initial concerns.

c) In addition the Debtors' CRO spent most of these first three months determining whether the Debtors' business relationship with the Management Companies was beneficial or detrimental to the Debtors. The CRO has determined that the

    relationship is advantageous for the Debtors but that assertion has been challenged by the UST and by Tenas-Reynard. The Debtors hope to resolve issues surrounding their business relationship, but the hearing on the Management Company Motion is not until November 18, 2015, which is one day before exclusivity expires. The Debtors need to have certainty regarding their operations and the management of the Medallions and Taxi Vehicles before filing their plan of reorganization.

d) The creditor group comprising the Committee was amended on September 24, 2015, and the Committee retained counsel just two weeks ago. The Debtors and Committee have been working cooperatively with each other and the Debtors have produced documents to the Committee for its review. However, in this brief period of time, the Debtors and the Committee have not had the time or opportunity to discuss the scope and details of the Debtors' reorganization plan. The Debtors and Committee need sufficient time to discuss, formulate and negotiate a plan.

e) The Bar Date Order was entered on October 26, 2015, and the Debtors will not know what claims have been filed by non-governmental units until December 21, 2015 and governmental until January 18, 2016. The claims filed are of particular importance in formulating a plan here because, among other things, there are twenty-two separate Debtor entities. The Debtors need to see what claims are filed against each Debtor in order to assess each Debtor's restructuring options. Extension of the Exclusive Periods will enable the Debtors to analyze the full universe of claims against the estate.

    f) This request for an extension of the Debtors' Exclusive Periods is the Debtors' first such request. The Debtors expect to file a plan of reorganization within the time provided by this first requested extension of their Exclusive Periods.

    g) The Debtors are not seeking an extension of their Exclusive Periods to exert pressure on any party.

    h) The Debtors are proceeding diligently toward completion of the bankruptcy cases and will propose a plan as soon as practicable.

30. The Debtors believe that the requested extensions will provide sufficient additional time to allow them to file a confirmable Chapter 11 plan. For the reasons outlined above, the Debtors submit that cause exists for the relief requested herein.

31. Although the Debtors believe that an acceptable plan will be filed within the requested extensions of their Exclusive Periods, the Debtors reserve the right to request additional extensions to the extent necessary under the circumstances.

## **NOTICE**

32. Notice of this Motion has been given by regular first class mail to (a) the Office of the United States Trustee; (b) the Debtors' secured creditors, or their counsel if known, (c) counsel to the Committee; and (d) all parties who filed a notice of appearance in this case. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice need be given.

## **NO PRIOR REQUEST**

33. No previous request for the relief sought in this Motion has been made to this or any other court.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order granting the relief requested herein and such other and further relief as is just and proper.

Dated: New York, New York
October 30, 2015

                **KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By: */s/ Fred Stevens*
     Fred Stevens
     Maeghan J. McLoughlin
     200 West 41st St., 17th Floor
     New York, New York 10036
     Tel: (212) 972-3000
     Fax: (212) 972-2245
     Email: fstevens@klestadt.com
            mmcloughlin@klestadt.com

     *Attorneys to the Debtors and Debtors in possession*