**KLESTADT WINTERS JURELLER**  **Hearing Date: May 4, 2016**
**SOUTHARD & STEVENS, LLP**   **Hearing Time: 9:30 a.m.**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Stephanie R. Sweeney

*Counsel to the Debtors and Debtors in possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| HYPNOTIC TAXI LLC, et al.,[1] | : | Case No. 15-43300 (CEC) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-----------------------------------------------------------------x

**DEBTORS' OBJECTION TO THE MOTION OF CITIBANK, N.A. FOR
AN ORDER LIFTING STAY OR, ALTERNATIVELY, DISMISSING
FIFTEEN OF THE TWENTY-TWO CHAPTER 11 CASES**

**TO THE HONORABLE CARLA E. CRAIG,**
**CHIEF UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their counsel, Klestadt Winters Jureller Southard & Stevens, LLP, submit this objection (the "Objection") to the motion [Docket No. 217] (the "Motion") of Citibank, N.A. ("Citibank") for an order granting Citibank relief from the automatic stay or, in the alternative,

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) Hypnotic Taxi LLC (6632)(Case No. 15-43300); (ii) Bombshell Taxi LLC (1282)(Case No. 15-43301); (iii) Bourbon Taxi LLC (7155)(Case No. 15-43302); (iv) Butterfly Taxi LLC (6992)(Case No. 15-43303); (v) Candy Apple Taxi LLC (0249)(Case No. 15-43304); (vi) Chianti Taxi, LLC (6799)(Case No. 15-43305); (vii) Chopard Taxi Inc. (0746)(Case No. 15-43306); (viii) Cupcake Taxi LLC (0324)(Case No. 15-43307); (ix) Dorit Transit Inc. (9129)(Case No. 15-43308); (x) France Taxi LLC, (9592)(Case No. 15-43309); (xi) Hennessey Taxi Inc. (4039)(Case No. 15-43310); (xii) Iceberg Taxi Inc. (5877)(Case No. 15-43311); (xiii) Marseille Taxi LLC (9890)(Case No. 15-43312); (xiv) Merlot Taxi LLC (7103)(Case No. 15-43313); (xv) Milkyway Cab Corp. (5061)(Case No 15-43314); (xvi) Palermo Taxi, Inc. (5956)(Case No. 15-43315); (xvii) Pinot Noir Taxi LLC (6725)(Case No. 15-43316); (xviii) Pointer Taxi LLC (2323)(Case No. 15-43317); (xix) Pudding Taxi Inc. (0432)(Case No. 15-43318); (xx) Stoli Taxi Inc. (4079)(Case No. 15-43319); (xxi) Vodka Taxi LLC (4239)(Case No. 15-43320); and (xxii) VSOP Taxi Inc. (3909)(Case No. 15-43321).

dismissing fifteen of twenty-two of the Debtors' chapter 11 cases (the "Fifteen Cases"). In support of this Objection, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

As a preliminary matter, the Debtors are completely confused as to why Citibank waited to file the Motion until eight months after the commencement of the Debtors' cases, and just after the Debtors proposed a joint plan of reorganization (the "Plan"). All of the facts that Citibank asserts in support of the Motion were generally known to Citibank and the public since the inception of these cases. The Motion could have been filed at or near the inception of these cases. Further, Citibank has not been a docile creditor that just woke up and decided to file the Motion to get the case moving. Citibank has been actively litigating with the Debtors and non-debtors since the very beginning. So the question remains, why did Citibank watch the Debtors, the Creditors' Committee, and other parties do a tremendous amount of work, and then just now, after the Plan has been filed, seek to lift the stay in or dismiss the Fifteen Cases?

Regardless of Citibank's motive in filing the Motion eight months after the cases were filed, the belated Motion should be denied for myriad reasons, including the following:

1) Under the equitable doctrine of laches, Citibank is barred from prosecuting the Motion based upon the underlying facts because Citibank actively participated in these cases for eight months, at the expense of the Debtors, their creditors and all other parties in interest;

2) Citibank has failed to show cause for dismissal or lifting the stay. The alleged two-party dispute between the Debtors and Citibank does not mean that the Debtors have no unsecured debt or require dismissal for bad faith. The Debtors in the Fifteen Cases not only have pre-petition creditors, but also share equal responsibility in paying the

        accumulated administrative cost of prosecuting all of the Debtors' cases, much of which was incurred in dealing with Citibank's litigiousness.

3) Dismissal would not be in the best interests of the Debtors or their creditors and would derail the Debtors' attempted reorganization. Even if Citibank were successful in lifting the stay or dismissing the Fifteen Cases, it has acknowledged that it lacks the ability at this time to satisfy its alleged claim with the medallions in the Fifteen Cases. In fact, as this Court already recognized the market for the medallions is completely illiquid at this point in time. The Debtors, on the other hand, intend to lease the medallions at above-market rates to the insider management companies in order to help fund the Plan and pay creditors 100% of their claims. The Debtors in the Fifteen Cases are essential to this Plan, which is to be funded by the excess fees generated by the lease of the medallions of those fifteen Debtors. If the Fifteen Cases are dismissed or if Citibank is permitted to seize those Debtors' medallions, the creditors of the remaining seven Debtors will undoubtedly be adversely affected.

For all the foregoing reasons and those set forth in detail below, the Debtors respectfully submit that the Motion should be denied.

## STATEMENT OF FACTS

### a. The Debtors' Bankruptcy Cases

1.    On July 22, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the or this "Court"). On August 10, 2015, the Court entered an order directing the joint administration of the Debtors' cases [Docket No. 26].

2.     The Debtors continue to manage their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors retained Joshua Rizack as their Chief Restructuring Officer (the "CRO"). The CRO is leading the Debtors' restructuring efforts.

3.     As of the date of the filing of this Motion, no trustee or examiner has been requested or appointed.

4.     On April 6, 2016, the United States Trustee amended the composition of the official committee of unsecured creditors (the "Creditors' Committee") for the third time in these cases [Docket No. 223]. The members of the Creditors' Committee at this point in time are Hereford Insurance Company, Jeremy Joseph, Peri Edelstein and Josette Marie Tenas-Reynard.

### b. The Citibank Litigation

5.     Prior to the Petition Date, in January 2012, the Debtors became obligated to Citibank with respect to loans made by Citibank to each of the Debtors (collectively, the "Citi Loans").

6.     On March 6, 2015, Citibank commenced an action against the Debtors, Evgeny Freidman, and Taxi Club Management, Inc. in the Supreme Court for the State of New York, New York County, *CITIBANK, N.A. v. BOMBSHELL TAXI LLC, et al.*, Index No.: 650691/2015 (the "Citi Action").

7.     On July 29, 2015, the Debtors filed a notice of removal of the Citi Action from the Supreme Court to the United States District Court for the Southern District of New York (Case No. 15-cv-05938, Rakoff, D.J.).

8.     On or around August 3, 2015, the Debtors filed a motion to transfer venue of the Citi Action from the United States District Court for the Southern District of New York to the

United States District Court for the Eastern District of New York. That motion was granted on August 21, 2015 [Docket No. 42], and the Citi Action was transferred to the Eastern District of New York (Case No. 15-cv-05037, Chen, D.J.).

9. On October 13, 2015, the Debtors filed a motion to refer the Citi Action to this Court, which motion was granted on October 21, 2015.

10. The Citi Action was first docketed with this Court on November 5, 2015 (Adv. Pro. No. 15-1185). Immediately upon its docketing, Citibank filed a motion for an order remanding the Citi Action back to the State Court or this Court's abstention from hearing the matter [Docket No. 2] (the "Abstention/Remand Motion"), and a motion for a temporary restraining order and attachment of Evgeny Freidman's assets in connection with his guaranty of the Citi Loans [Docket Nos. 4 and 5].

11. On November 30, 2015, after significant discovery and litigation, the Court referred Citibank and Evgeny Freidman to mediation and appointed the Honorable Elizabeth S. Stong, United States Bankruptcy Judge, as the mediator. On January 8, 2016, it became clear that the mediation would not lead to an immediate resolution, and on January 12, 2016, this Court entered a Decision after Trial authorizing Citibank's attachment of certain real estate assets (the "Attachment and TRO") [Docket No. 73].

12. On January 19, 2016, seven days after this Court entered the Attachment and TRO against Freidman, Citi withdrew its Abstention/Remand Motion [Docket No. 81] and the Citi Action remains pending before this Court.

13. The Citi Action is ongoing and there are currently numerous unresolved matters and issues including: (i) Citibank's motion for summary judgment against all guarantors; (ii) the motion by various third party trusts challenging the Attachment and TRO, and significant

discovery disputes regarding same; (iii) Citibank's claims against the Debtors on the medallion loans that are not the subject of Citibank's summary judgment motion; and (iv) the Debtors' and other defendants' counterclaims asserted against Citibank.

### c. The Debtors' Proposed Plan

14. On March 14, 2016, the Debtors filed their Plan [Docket No. 205] and the Disclosure Statement in Support of the Plan [Docket No. 204] (the "Disclosure Statement"). The Debtors filed the Plan within their exclusive time to do so as extended by orders of this Court to March 18, 2016. The Debtors currently have a motion pending for extension of their exclusive time to solicit acceptances to the Plan [Docket No. 227] and intend to proceed with the solicitation process expeditiously upon approval of the Disclosure Statement. The hearing to consider approval of the Debtors' Disclosure Statement is presently scheduled for May 4, 2016.

### d. Citibank's Motion to Dismiss

15. Just nine days after the Debtors filed their Plan, and just hours after the trusts filed the motions challenging the Attachment and TRO, Citibank filed the Motion to lift the stay in or dismiss the Fifteen Cases.

16. The Debtors' proposed Plan contemplates and requires utilizing revenue derived from each of the Debtors, including the fifteen Debtors whose cases Citibank seeks to dismiss, to support the Debtors' restructuring effort and emergence from bankruptcy.[2] Dismissing or lifting the stay in the Fifteen Cases would render the Plan unfeasible and force the Debtors back to the drawing board in terms of devising an exit strategy.

---

[2] The Plan also contemplates permitting Citibank to retain the benefits of the attachment against certain non-debtor real estate assets obtained from this Court. For the avoidance of doubt, the Debtors do not intend to propose providing Citibank with anything more than the asserted benefits of the attachment.

**OBJECTION**

17. As set forth below, Citibank's Motion should be denied for myriad reasons including: (i) the equitable doctrine of laches bars Citibank's request at this stage in the case; (ii) Citibank has not stated cause for relief from stay or dismissal; and (iii) granting the Motion is not in the best interests of the Debtors' creditors.

### I. Citibank is Barred by the Equitable Doctrine of Laches from Asserting the Motion at this Late Stage

18. Bankruptcy Courts may exercise their "equitable discretion to deny a § 1112(b) motion as untimely based in whole or in part on the doctrine of laches." In re Shea & Gould, 214 B.R. 739, 749 (Bankr. S.D.N.Y. 1997) (listing cases), aff'd, Durkin v. Shea & Gould, 97 Civ. 8879 (AGS) (S.D.N.Y. Dec. 4, 1997). For laches to apply, the following factors must be shown: (1) delay in assertion of a claim; (2) the delay is inexcusable; and (3) undue prejudice results from the delay. In re Mirant Corp., No. 03-46590, 2005 WL 2148362, at *11 (Bankr. N.D. Tex. Jan. 26, 2005) (citing Geyen v. Marsh, 775 F.2d 1303, 1310 (5th Cir. 1985)).

19. The Motion meets each of these requirements. All of the facts underlying the Motion existed and were fully known by Citibank since the Debtors' cases were filed nine months ago. There is no excuse, and Citibank asserts no excuse in the Motion, for this delay. The Debtors, the Creditors' Committee, the CRO and all other parties in interest have spent considerable time and money administering these chapter 11 cases – including as a result of Citibank's litigiousness – which would have been avoided but for Citibank's delay in filing the Motion (assuming, *arguendo*, that Citibank would ever be entitled to the relief sought in the Motion).[3] The Debtors believe the only reason for filing the Motion at this late stage is that Citibank disagrees with the proposed Plan and is attempting to end run the confirmation process.

---

[3] Although all fees and reimbursement of expenses remains subject to award by this Court upon proper application and a hearing, to date the fees incurred exceed $1 million.

As one court has aptly described it, this is an inappropriate manipulation of the Bankruptcy Code warranting denial of the Motion:

> [Movant] could have advanced the same legal arguments he is making now 19 months ago when debtor filed this case. Rather, he embraced the chapter 11 process and now, when debtor is seeking approval of its Amended Disclosure Statement in anticipation of presenting its Amended Plan to its creditors, he is attempting to manipulate the Bankruptcy Code to the detriment of other similarly situated creditors. There is prejudice to the estate and creditors. Debtor has expended time and money in dealing with the administration of its case and, particularly, in negotiating the Amended Plan with interested parties. All of that will be lost if we dismiss the case. Creditors will suffer additional prejudice because they will be forced to initiate or reinitiate potentially time consuming and expensive litigation to liquidate and satisfy their claims. If granted, the relief [Movant] has unjustifiably waited 19 months to seek would result in a "race to the courthouse" and the inequitable distribution, if any, among like creditors. That is precisely what the Bankruptcy Code seeks to prevent.

In re Shea & Gould, 214 B.R. at 750; see also Alexander v. Farmers' Supply Co. (In re Farmers' Supply Co.), 275 F. 824, 826 (5th Cir. 1921) ("If [the minority shareholder] had the right to defeat the voluntary petition…because there was no corporate action authorizing the…proceeding, he lost that right by his [4 month] silence and inaction"); In re I.D. Craig Service Corp., 118 B.R. 335, 337 (Bankr. W.D. Pa. 1990) (laches barred motion to dismiss where board of directors waited more than one year before objecting to president's lack of authority in filing chapter 11 case and board members actively participated in numerous proceedings); cf. In re Giggles Restaurant, Inc., 103 B.R. 549, 554 (D.N.J. 1989) (rejecting laches argument where six month delay was reasonable because factual basis for dismissal was only recently discovered by movant). As Citibank has no proper excuse for the late filing, and the Motion will result in undue prejudice to the Debtors and all parties in interest, the Motion is barred by laches.

## II. Citibank has Not Shown Cause for Purposes of Dismissal or Lifting the Automatic Stay

20. Citibank has failed to show cause for dismissal or lifting the stay. The Bankruptcy Code provides that, on request of a party in interest and after notice and a hearing, the court shall convert or dismiss a chapter 11 case, or shall lift the automatic stay, "for cause, including the lack of adequate protection." 11 U.S.C. §§ 1112(b)(1); 362(d)(1). With respect to dismissal, the movant bears the burden of establishing that such cause exists. See, e.g., In re BH S&B Holdings, LLC, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010); In re Photo Promotion Associates, Inc., 47 B.R. 454 (Bankr. S.D.N.Y. 1985). Courts have held generally that "a bankruptcy petition should be dismissed for lack of good faith only sparingly and with great caution." In re General Growth Properties, Inc., 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009); see also In re Rubin Family Irrevocable Stock Trust, No. 13-72193, 2013 WL 6155606, *10 (Bankr. D.N.J. June 11, 2015).

21. Tellingly, Citibank does not argue lack of adequate protection as cause to lift the stay. Indeed, Citibank is adequately protected with respect to its interest in the medallions. During the course of these cases, the Debtors have maintained insurance on the medallions pursuant to the program approved by the laws of the State of New York, the New York City Taxi and Limousine Commission, and orders of this Court, and Citibank has received adequate protection payments equal to its historical debt service. There is also no evidence that the medallions have declined or are declining in value during the course of these cases. The market has remained statically illiquid during the course of the cases. Instead, Citibank speciously posits the Fifteen Cases were filed in bad faith and that is the basis to grant stay relief. Citibank's arguments cannot be further from the truth, as set forth below.

22. With respect to dismissal, Citibank does not point to any of the sixteen examples

9

of "cause" listed in the Bankruptcy Code as grounds for dismissal; indeed, contrary to these examples, the Debtors have maintained adequate insurance, complied with the Court's and the Bankruptcy Code's orders and procedures, and continue to satisfy their filing and reporting requirements and otherwise work with their CRO to manage their estates post-petition. See id. at 1112(b)(4). Most importantly, the Debtors have filed a proposed Plan and are actively working towards rehabilitation. See id. at 1112(b)(4)(A).

23. Ignoring the statutory criteria for relief from the stay or dismissal, Citibank instead asserts that the Debtors filed the Fifteen Cases in bad faith based upon the factors listed by the Court in C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship), 113 F.3d 1304 (2d Cir. 1997), which are typically applied in single-asset real estate cases. See In re General Growth Properties, Inc., 409 B.R. 43, 56 (S.D.N.Y. 2009) (finding "relatively few of these factors are relevant" outside of the single-asset real estate context). C-TC, like many other cases concerning dismissal for bad faith, involved a single-asset real estate debtor engaged in a last-minute effort to fend off foreclosure. Id. Thus, at its core, C-TC requires that it be "clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." In re C-TC, 113 F.3d at 1309; see also In re General Growth, 409 B.R. at 56 ("Under [C-TC], grounds for dismissal exist if it is clear on the filing date that there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings.") (internal quotations omitted).

24. As of the Petition Date, the Debtors fully intended to reorganize and had a reasonable probability, as evidenced by the 100% Plan currently before the Court, of emerging from these bankruptcy proceedings. The Debtors are utilizing the bankruptcy process in an

honest effort to restructure their debts and are proposing in their Plan to pay their creditors in full, which is "the antithesis of bad faith." In re Rubin, 2013 WL 6155606 at *12; see also In re Trina Assocs., 128 B.R. 858, 873 (Bankr. E.D.N.Y. 1991) (declining to dismiss case despite two-party dispute, state court litigation and nominal unsecured debt where debtor "has an honest intent to attempt a reorganization"); In re Sletteland, 260 B.R. 657, 669 (Bankr. S.D.N.Y. 2001) ("[I]n light of the failure…to show that the Debtor lacked a good faith intent to reorganize his debt when he filed this case, or that he intended to use this court solely as a means to delay or frustrate…State court issues, the motion to dismiss on bad faith grounds will be denied."). Under the Plan, the Debtors propose to lease their medallions at above-market rates to the insider management companies in order to pay their various secured and unsecured creditors, including holders of administrative expense claims, priority tax claims, personal injury claims and non-personal injury unsecured claims, 100% of the allowed amounts of their claims. The fact that the Debtors' dispute with their secured lender has taken center stage in these proceedings is hardly a reason to dismiss the Fifteen Cases as a bad faith filing. Where the basis for filing a bankruptcy case "is largely though not entirely a two-party dispute, that is not a sufficient basis by itself for dismissing or converting the case" on grounds of bad faith. In re Hyatt, 479 B.R. 880, 886 (Bankr. D. N.M. 2012) (denying motion to dismiss notwithstanding debtor's counsel's admission, "this is a one creditor case. You know, it's not like there are other significant creditors out there.").

### III. The Court May Not Dismiss the Fifteen Cases under 1112(b)(2) Because Dismissal Would Not be in the Best Interests of Creditors

25. Even if cause is established, the court "must examine whether dismissal or conversion of a case under chapter 7 is in the best interests of the creditors and the estate." In re BH S&B Holdings, LLC, 439 B.R. at 346; 11 U.S.C. § 1112(b)(2). The Bankruptcy Code

provides that the court "may not…dismiss a case" if unusual circumstances exist establishing that dismissal is not in the best interests of creditors and the estate, and the debtors show "a reasonable likelihood that a plan will be confirmed within…a reasonable time." 11 U.S.C. § 1112(b)(2). Citibank completely ignores this section of the Bankruptcy Code in its Motion.

26. There is no justifiable reason for dismissing or lifting the stay in only the Fifteen Cases, and doing so would derail the Plan. The Debtors have a reasonable likelihood of rehabilitation as a Plan has been filed and it proposes to pay creditors 100% of the allowed amount of their claims. The excess fees generated by the lease of the medallions in the Fifteen Cases are necessary to pay creditors of all twenty-two of the Debtors. Dismissing or lifting the stay in the Fifteen Cases would therefore adversely affect the creditors of the remaining seven Debtors. Frankly, the Debtors are hard-pressed to understand how the relief sought in the Motion is even in the best interests of Citibank, as the market for the medallions is completely illiquid at this time. If the Motion were granted, it would undermine the architecture of the current Plan and force the Debtors back to the drawing board in terms of devising an exit strategy. The Court should not allow Citibank's manipulation of the confirmation process to succeed at the expense of the Debtors' estates and creditors.

*[Continued on the following page]*

## CONCLUSION

27. The Motion is barred by laches, as Citibank participated in these cases for eight months with knowledge of all relevant facts before filing the Motion, unduly prejudicing the Debtors and all other parties in interest. Citibank has failed to show bad faith on the part of the Debtors in filing the Fifteen Cases or otherwise establish cause for lifting the stay or dismissing the Fifteen Cases. The Debtors have filed a Plan and have shown a reasonable likelihood of rehabilitation such that dismissing the Fifteen Cases would adversely affect the Debtors' creditors. Accordingly, the Debtors respectfully request the Motion be denied.

Dated: New York, New York
April 27, 2016

Respectfully submitted,

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By: */s/ Fred Stevens*
Fred Stevens
Stephanie R. Sweeney
200 West 41st Street, 17th Floor
New York, New York 10036-7203
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: fstevens@klestadt.com
ssweeney@klestadt.com

*Attorneys to the Debtors and Debtors in possession*