LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Gary F. Herbst, Esq.
Jacqulyn S. Loftin, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:

HYPNOTIC TAXI LLC, *et al.*,

                                    Debtors.
-------------------------------------------------------------x

Chapter 7

Case No.: 15-43300 (CEC)
(Jointly Administered)

**MOTION OF CHAPTER 7 TRUSTEE FOR AN ORDER: (I) APPROVING THE
STIPULATION RESPECTING THE SALE OF CERTAIN PERSONAL PROPERTY; (II)
AUTHORIZING THE AUCTION SALE(S) OF CERTAIN PERSONAL PROPERTY;
(III) APPROVING THE SALE AND NOTICE TERMS FOR THE AUCTION SALE(S)
OF CERTAIN PERSONAL PROPERTY; (IV) APPROVING THE SALE OF CERTAIN
PERSONAL PROPERTY, FREE AND CLEAR OF ALL LIENS, CLAIMS AND
ENCUMBRANCES, SECURITY INTERESTS AND OTHER INTERESTS TO THE
SUCCESSFUL BIDDER(S) AT THE AUCTION SALE(S); AND (V) GRANTING
RELATED RELIEF**

TO THE HONORABLE CARLA E. CRAIG
CHIEF JUDGE UNITED STATES BANKUPTCY COURT
EASTERN DISTRICT OF NEW YORK

    Gregory Messer, the Chapter 7 Trustee (the "Trustee") of the jointly administered estates

of Hypnotic Taxi LLC, Bombshell Taxi LLC, Bourbon Taxi LLC, Butterfly Taxi LLC, Candy

Apple Taxi LLC, Chianti Taxi LLC, Chopard Taxi Inc., Cupcake Taxi LLC, Dorit Transit Inc.,

France Taxi LLC, Hennessey Taxi Inc., Iceberg Taxi Inc., Marseille Taxi LLC, Merlot Taxi

LLC, Milkyway Cab Corp., Palermo Taxi Inc., Pinot Noir Taxi LLC, Pointer Taxi LLC, Pudding

Taxi Inc., Stoli Taxi Inc., Vodka Taxi LLC, and VSOP Taxi Inc. (collectively the "Debtors"), by

his counsel, LaMonica Herbst & Maniscalco, LLP, submits this motion (the "Motion")[1] seeking

---

[1] Capitalized terms not otherwise defined herein shall have the definition ascribed to the in the Stipulation or Sale Terms.

1

an Order scheduling a hearing on shortened notice and the entry of an Order: (i) approving the *Stipulation Approving the Carve Out from the Sale of the Debtors' Medallions for the Benefit of the Estates and their Creditors* between the Trustee, on the Debtors' estates, and Citibank N.A. ("Citibank"), a copy of which is annexed as **Exhibit "A"** (the "Stipulation"); (ii) authorizing the Trustee to proceed with public auction sale(s) of the Debtors' Medallions (the "Sale"); (iii) approving the terms and conditions of sale (the "Sale Terms") and noticing for the Sale(s) (the "Notice of Sale"), a copy of each are annexed as **Exhibit "B" and "C"**, respectively; (iv) approving the sale of Medallions, free and clear of all liens, claims and encumbrances, security interests and other interests (collectively, the "Liens"), to the successful bidder(s) at the Sale(s); and (v) approving and granting such other, further and different relief as this Court deems just and proper, and respectfully states as follows:

## PRELIMINARY STATEMENT

1.    This Motion represents a critical step in the orderly wind down of the Debtors' operations and liquidation of the Debtors' assets. By this Motion, the Trustee seeks authorization to proceed with Sale and approval of the Sale Terms and Notice of Sale to facilitate the Sale of the Debtors' Medallions (as defined below) in accordance with Local Bankruptcy Rule 6004-1 and General Order M-383 dated November 18, 2009 adopting the Amended Guidelines for the Conduct of Asset Sales (the "M-383 Order").

2.    Citibank asserts first priority liens on the Medallions.  Subject to Court approval, the Trustee and Citibank have entered into the Stipulation, which provides for, among other things, the consensual Sale of the Medallions by the Trustee with an aggregate carve-out of up to $1,000,000 from the Net Proceeds (as defined below) for the benefit of the estates and their

creditors. Indeed, the Stipulation provides a mechanism for the orderly liquidation of the Medallions—the primary assets of the Debtors' estates.

3.      The Trustee is no longer operating the Medallions. Equally as important, the Trustee has received interest from various parties, and submits that at this time the Medallions best value can be realized through Sale(s). Therefore, it is essential that the Trustee be authorized to immediately market and publically sell the Medallions.

4.      For these and the reasons set forth below, the Trustee respectfully requests that the Court approve the Motion.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory predicates for the relief sought herein include 11 U.S.C. §§ 105, 363, 364 and 506 (the "Bankruptcy Code"), Rules 2002 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 6004-1.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Procedural History of the Debtors' Bankruptcy Cases

8.      On July 22, 2015 (the "Filing Date"), the Debtors each filed separate voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Eastern District of New York (the "Court").

9.      By Order dated August 10, 2015 [Dkt No. 26], the Debtors' cases were jointly administered under Hypnotic Taxi LLC [Case No. 15-43300-CEC].

10.     On September 24, 2015, the United States Trustee filed an amended appointment of the Official Committee of Unsecured Creditors in the Debtors' cases [Docket No. 64].

11.     By Order dated September 22, 2016 [Dkt. No. 368], the Debtors' cases were converted to ones under Chapter 7 of the Bankruptcy Code (the "Conversion Date").

12.     By Notice of Appointment dated September 23, 2016 [Dkt. No. 370], Gregory Messer was appointed as the interim Chapter 7 Trustee of the Debtors' estates, has since duly qualified and is the permanent Trustee administering these estates.

13.     By Order dated October 28, 2016 [Dkt. No. 392], the Court authorized the Trustee to operate the Debtors' business and approved the former management agreements with the former managers, Downtown Taxi Management, LLC, Woodside Management, Inc. and Tunnel Taxi Management, LLC (collectively, the "Former Managers"), which were later terminated.

14.     Prior to May 31, 2017, there was $198,723.42 in the aggregate in the Debtors' estates, derived from, among other things, the operation of the Debtors' business (the "Original Estates' Funds").

15.     By Order dated December 29, 2016, the Trustee was authorized to continue to operate the Debtors' business until April 30, 2017 and was also authorized to enter into a new management agreement with NYC Taxi Group LLC (the "721 Order") [Dkt. No. 449], which expired on April 30, 2017.

16.     By Order entered on March 9, 2017, the Court approved the employment of Maltz Action Inc. d/b/a Maltz Auctions ("Maltz Auctions") as auctioneer for the Trustee to sell the Debtors' Medallions [Dkt. No. 546].

B.    <u>The Estates' Assets</u>

17.    Each of the Debtors own either two or three New York City taxi medallions (the "<u>Medallions</u>") issued by the New York City Taxi and Limousine Commission ("<u>TLC</u>"). The Debtors collectively own forty-six (46) Medallions. The Debtors' Medallions consist of 34 unrestricted Medallions, 6 alternative fuel/hybrid Medallions and 6 handicap Medallions.

18.    According to the Debtors' respective schedules, the Debtors collectively own thirty-nine (39) taxi vehicles associated with the Medallions (the "<u>Taxi Vehicles</u>").

19.    Pursuant to an Order entered on February 3, 2017 [Dkt. No. 511], the Trustee settled the Former Managers' interest in following four Taxi Vehicles: i) 2015 Toyota, Vehicle Identification Number JTDZN3EU3FJ016248 titled in the name of  Bourbon Taxi LLC; ii) 2012 Toyota, Vehicle Identification Number 5TDZK3DC2CS217557 titled in the name of  Candy Apple Taxi LLC; iii) 2014 Nissan, Vehicle Identification Number 3N8CM0JT4EK702241 titled in the name of  Dorit Transit Inc.; and iv) 2015 Toyota, Vehicle Identification Number JTDZN3EU9FJ027111 titled in the name of  Pointer Taxi LLC for a settlement sum in the amount of $35,000 (the "<u>Vehicle Proceeds</u>").

20.    On May 31, 2017, in accordance with the Court's Order entered on May 30, 2017, the Trustee paid to the TLC an aggregate amount of $23,100.00 to renew the licenses of 14 of the Debtors' Medallions (the "<u>Renewal Fee</u>") to ensure they remain active and in good standing.

21.    As of June 22, 2017, there remains $175,623.42 in the aggregate in the Debtors' estates (the "<u>Estates' Funds</u>").

**C.**    **Secured Indebtedness of Citibank**

22.    Citibank is secured in and to the Debtors' Medallions and the proceeds from the operation of the Debtors' Medallions and the causes of action relating thereto (the "<u>Citibank Collateral</u>").

23.    The Taxi Vehicles, which are property of the Debtors' estates, are not part of the Citibank Collateral and are not subject to any Citibank liens. Similarly, the Vehicle Proceeds are property of the Debtors' estates and are not subject to the Citibank Collateral.

**D.**    **The Carve-Out Stipulation**

24.    The Trustee is prepared to move forward with the Sale of the Debtors' Medallions free and clear of the Liens pursuant to Bankruptcy Code § 363(b), (f) and (m). Citibank and the Trustee negotiated a carve-out from the proceeds from the Citibank Collateral as set forth in the Stipulation, the salient terms of which are set forth herein.

25.    Under the terms of the Stipulation, the Debtors' estates shall retain the Estates' Funds, which shall be credited to, and applied against, the Cap (as defined below). Moreover, the Renewal Fee will be reimbursed to the respective 14 Debtor estates by Citibank from the first proceeds of Sale of the Medallions.

26.    Subject to the Cap, the Debtors' estates will retain 5% from the Net Proceeds (as defined in the Stipulation) of the Sale of the Medallions, which shall be applied to the Cap. The balance of the Net Proceeds shall be distributed to Citibank (the "<u>Citibank Sale Proceeds</u>").

27.    Citibank also has the right to credit bid at the Sale of Medallions, even if it does not submit a sealed bid prior to the sale(s). If Citibank is the successful bidder at the Sale(s), then, notwithstanding the Terms of Sale, it shall only pay a 2% buyer's premium to Maltz Auctions.

28.     Any recoveries from causes of actions or claims pursued by the Trustee, on behalf of the Debtors' estates, against the Former Managers (the "Manager Recoveries"), will be applied as follows: (i) fifty (50%) percent of the Manager Recoveries will be retained by the Debtors' estates and applied to the Cap; and (ii) fifty (50%) percent of the Manager Recoveries shall be retained by the Debtors' estates and shall be deemed unencumbered assets of the estates and not applied against the Cap. After the Cap has been reached, the Debtors' estates shall retain fifty (50%) percent of the Manager Recoveries and Citibank will receive fifty (50%) percent of the Manager Recoveries.

29.     Except as set forth in paragraphs 3 and 6 of the Stipulation, the maximum aggregate amount to be received by the Debtors' estates from Citibank's Collateral will be $1,000,000.00 (the "Cap").  The Trustee also expressly waives the right to seek any recovery from Citibank or the Citibank Collateral under Bankruptcy Code § 506(c), other than as expressly authorized therein.

30.     The Vehicles Proceeds and any proceeds from the sale or transfer of the Taxi Vehicles will be deemed property of the Debtors' estates and are not subject to, and will not be applied against, the Cap.

31.     From the gross proceeds of the Sale of the Medallions (including cash and credit bids), the Trustee will first pay any amount required to be paid to the holders of senior Liens in the Medallions (if any), or to the TLC, New York State or any other party or entity for Liens, taxes, fees or penalties, but only to the extent that the transfer of the Medallions cannot be accomplished unless such payments are made (the "Transfer Costs"). The funds that remain after the payment of the Transfer Costs shall be referred to as the "Net Proceeds".

32.     The Trustee is authorized to pay the Transfer Costs without further Order of the Court. At least seven (7) days prior to paying any Transfer Costs, the Trustee shall provide written notice to Citibank (by email to Citibank's counsel) of the amount and precise description of the Transfer Costs the Trustee proposes to pay, to whom the Transfer Costs must be paid and documents evidencing/supporting the Transfer Costs.

33.     Other than the payments set forth in the Stipulation, there shall be no other payments made by the Trustee out of the Net Proceeds without the prior written consent of Citibank.

34.     In the event the successful bidder(s) at the Sale(s) fail(s) to close and forfeit(s) the amounts paid for a deposit and for a buyer's premium (collectively, the "Forfeited Amounts"), the Trustee will remit the Forfeited Amounts to Citibank within ten (10) days after declaring the successful bidder in default.

35.     The Trustee is authorized to remit to Citibank the Citibank Sale Proceeds and Citibank's portion from the Manager Recoveries without further Order of the Court. Citibank shall retain a general unsecured claim against the Debtors' estates for any amount of its secured claims that remains unpaid. The Trustee is authorized to apportion any recoveries from Manager Recoveries equally between the Debtors' estates.

36.     Lastly, any other recoveries by the Debtors' estates, other than the Manager Recoveries (the "Other Recoveries"), will not be applied to the Cap and are not part of the Citibank Collateral.

## RELIEF REQUESTED AND BASIS FOR RELIEF REQUESTED

### I.    The Stipulation Should Be Approved.

37.    The Trustee submits that the carve-out proposed under the terms of the Stipulation will provide the estates with an opportunity to realize the greatest value from the Medallions. As set forth above, the estates shall be entitled to receive up to a CAP of $1,000,000 from the Net Sale Proceeds from the Sale of the Medallions. Equally as important, the Transfer Costs, including, but not limited to, the fees and penalties owed to TLC and New York State will be paid from the gross proceeds and will not impact the CAP, which is reserved for the benefit of the estates' creditors. The Trustee has been monitoring the outstanding amounts incurred pre-petition, during the chapter 11 proceeding and after the conversion through communications with the TLC and New York State. It is the Trustee's understanding that such outstanding fees are substantial and must be paid before the Medallions can be transferred to a new owner under the TLC Guidelines and by New York State. Citibank and the Trustee have agreed that these will be paid in full from the gross proceeds and will not affect the CAP reserved for the estates' remaining creditors.

38.    The Trustee submits that the Stipulation provides an avenue for the estates to realize the maximum value from the sale of the Medallions.  For these reasons, the Trustee, in the exercise of his reasonable business judgment, submits that the Stipulation is in the best interests of the Debtors' estates and recommends its approval.

### II.    The Sale of the Medallions Represents a Reasonable Exercise of the Trustee's Business Judgment and Should Be Approved.

39.    Bankruptcy Code § 363 provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). The terms of such sale is generally within the sound

discretion of the debtor, or if applicable the trustee. See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); see also Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 145 (2d Cir. 1993); In re Dial-A-Mattress Operating Corp., 2009 Bankr. LEXIS 1801, at *12 (Bankr. E.D.N.Y. June 24, 2009) ("The business judgment test is the standard for Section 363 sales in this Circuit." (citations omitted)); In re Hirsch, 360 B.R. 43, 45–46, 48, 50 (Bankr. E.D.N.Y. 2007) (requiring "existence of 'a good business reason to grant such an application'" (quoting In re Lionel Corp., 722 F.2d at 1071)); In re Thomson McKinnon Sec., Inc., 120 B.R. 301, 307–08 (Bankr. S.D.N.Y. 1990). As recognized by the United States Court of Appeals for the Second Circuit in Lionel Corp., a court may approve a § 363 application after expressly determining from the evidence presented that a good business reason exists to grant such application. 722 F.2d 1063.

40.    In addition, Bankruptcy Code § 105(a) grants the Court the authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This provision is "the basis for a broad exercise of power [by the Court] in the administration of a bankruptcy case. 2 COLLIER ON BANKRUPTCY ¶ 105.01 (Alan N. Resnick and Henry J. Sommer. eds., 16th ed.).

41.    In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the ordinary course of business may be by private sale or by public sale. In practice, the preferred method is to conduct a public sale because a public sale will most often result in a greater number of potential bidders in the shortest amount of time. That is, in order to determine that a private sale has yielded the highest or best offer, property generally must remain on the market for a significantly longer period of time than when offered at a public sale.

10

42.     Local Rule 6004-1(a) further provides that:

> The trustee may sell property of the estate that the trustee reasonably believes has an aggregate gross value of no more than $10,000 by public or private sale on seven days' written notice to any party with an interest in such property, the landlord of the premises on which the property is located, and such other parties as the Court may direct. The notice of any proposed sale of property of the estate having an aggregate gross value of at least $2,500 shall include the time and place of the proposed sale, whether the sale will be public or private, and the terms and conditions of the proposed sale.

43.     The M-383 Order supplements the requirements of Bankruptcy Code § 363, Bankruptcy Rule 6004 and Local Rule 6004-1 and provided, in pertinent part, that:

> When multiple asset sales over time are expected, a [trustee] should consider seeking Court approval of global bidding procedures to avoid the need to obtain Court approval of procedures for each such sale. Similarly, the [trustee] should consider seeking Court approval of global notice and other appropriate procedures to facilitate sales of assets of limited value or *de minimis* sales that do not warrant an auction or a separate motion for each sale. What constitutes a *de minimis* sale will depend on the facts of each case.

See Local Rule 6004-1.

44.     Here, the Trustee determined, in his sound business judgment, that selling the Medallions outside the ordinary course of business at Sale(s) is justified, necessary and appropriate. Indeed, compelling business justifications exist for the approval of the proposed sales of the Medallions as set forth herein.

45.     Specifically, the Trustee is not operating the Debtors' Medallions at this time, but has the continued obligations to maintain the Medallions to keep them active and to ensure they are not suspended (*i.e.* paying the Renewal Fee). These costs can be relieved through the liquidation of the Medallions. Therefore, it is the best interests to begin selling these Medallions immediately.

46.     The Trustee intends to market and sell no less than 5 Medallions with the option to sell additional Medallions at the first Sale (or any Sale thereafter), if the Trustee, with the consent of Citibank and in consultation with Maltz Auction, believes that the Sale can garner the

highest and best price for additional Medallions. Each Sale will be held at New York LaGuardia Airport Marriott, 102-05 Ditmars Blvd, East Elmhurst, NY 11369. Indeed, the Trustee must be prudent in the sales of the Medallions and proceeding in this manner provides the Trustee with the flexibility to garner the highest price for each Medallion.

47.    Notice of the Sale(s) will be provided substantially in compliance with Bankruptcy Rules 6004(a) and (c) and 2002(a)(2) to all parties who have filed a notice of appearance in the Debtors' cases, all known secured creditors and/or lien holders, all known parties with an interest in the Medallions and the Office of the United States Trustee.

48.    The Sale(s) will also be advertised online and in print. It is anticipated that Maltz Auctions will to be published in *The New York Times* and relevant trade publications (either in print or electronically), including *Taxicab Times* and *TLC Monthly*.  In addition, Maltz Auctions has advised the Trustee that they will send direct mailings to targeted recipients, engage in telemarketing campaigns and engage a public relations company to assist with the promotion of the Sale(s). The Trustee believes that the marketing and advertising campaign proposed by Maltz Auctions, for which the estates will bear no costs, is designed to ensure that the highest and best offers for the Medallions are received.

49.    Further, the Medallions will be sold "as is", "where is", without any representations of any kind or nature whatsoever, including as to merchantability or fitness for a particular purpose, and without warranty or agreement as to the condition of such personal property.

50.    In order to solicit the highest or best Bids, the Trustee is conducting a two-step auction process and two-step approval process. The first step in the auction process is to submit sealed bids along with executed copies of the Sale Terms and the Bidder Identification and Offer

Form, annexed to Sale Terms as Exhibit "1", (collectively, the "Required Bid Documents") and either a deposit of 15% of the Bid the "Individual Deposit" or "Bulk Deposit"). The Trustee will accepts Bids two ways: i) Bids for multiple Medallions (a "Bulk Bid(s)"); and ii) Bids for Individual Medallions (an "Individual Bid").

51.    At the Sale(s), the Medallions will be offered for sale in bulk and/or individually. The Trustee will determine the highest or best bid (or bids) for the Medallions. After the Sale(s), the Trustee may seek the entry of Orders confirming the results of the Sale(s), but the Trustee shall not be required to seek the entry of any such Orders.

52.    In accordance with Local Rule 6004-1(f), within 21 days of the Sale(s), Maltz Auctions shall file a report of sale with the Court and transmit a copy of the report to the United States Trustee.

53.    For these reasons, the Trustee seeks approval of the global notice and other appropriate procedures set forth herein to facilitate the Sale(s) of the Medallions. The proposed advertising and marketing campaign, which will be at no cost to the estates, will also ensure that the highest and best offers for the Medallions will be received. The Trustee submits that the proposed sale process and global noticing process is reasonable, necessary and appropriate, and will enable him to receive the maximum value for the Medallions.

54.    Accordingly, the Trustee submits that there is cause for the Court to grant the relief requested herein.

**III.    The Sale Terms and Notice of Sale Should Be Approved**

**a.    The Sale Terms**

55.    The salient provisions of the Sale Terms are as follows:

a. The Medallions shall be sold "as is", "where is", without any representations of any kind or nature whatsoever, including as to merchantability or fitness for a

particular purpose, and without warranty or agreement as to the condition of such personal property;

b.  The Trustee shall sell and transfer the Medallion(s) to the Successful Purchaser, and in the event, of a Successful Purchaser's Default, the second highest bidder(s);

c.  On the Closing Date (as defined in paragraph 9 of the Sale Terms) the Successful Purchaser shall pay an amount equal to the Successful Bid minus the Successful Purchaser's Deposit;

d.  The Successful Purchaser is responsible for the .5% transfer tax;

e.  The transfer of the Medallion(s) to the Successful Purchaser is contingent upon approval by the TLC, which approval the Successful Purchaser shall promptly seek in good faith and at the sole cost and expense of the Successful Purchaser; and

f.  The sale and transfer of the Medallion(s) to the Successful Purchaser is free and clear of any and all Liens pursuant to Bankruptcy Code § 363(b) and (f).

56.    The Trustee submits that the Sale Terms are reasonably designed to ensure that the Debtors' estates receive the maximum benefit available from the sale of the Medallions and therefore warrant Court approval.

**b.    <u>The Notice of Sale</u>**

57.    Pursuant to Bankruptcy Rules 2002(c) and 6004(a), the Trustee is required to give 21 days' notice of any proposed sale of property not in the ordinary course of business to the Debtors and all creditors. <u>See</u> FED. R. BANKR. P. 2002(c) and 6004(a). Bankruptcy Rule 2002(c) provides that such notice must include the time and place of any auction, a sale hearing, and the time fixed for objections to the sale. <u>See</u> FED. R. BANKR. P. 2002(c). The M-383 Order provides that the statutory notice period should not be shorted for notice of the actual sale without a showing of good cause. <u>See</u> M-383 Order at 14, ¶ 2.

Case 1-15-43300-cec    Doc 629    Filed 07/11/17    Entered 07/11/17 11:23:51

58.     Here, the Trustee proposes to serve a Notice of Sale, substantially in the form annexed as **Exhibit C**, not less than twenty-one (21) days prior to the first scheduled Sale upon the following parties:

a.  The Debtors, through their counsel

b.  The United States Trustee;

c.  The Former Managers, through counsel;

d.  Entities who have requested notice under Bankruptcy Rule 2002;

e.  Entities who filed proofs of claim with the Court in the Debtors' cases;

f.  All entities known or reasonably believed to have asserted a lien, encumbrance or claim or other interest in the Medallions;

g.  All creditors listed on the Debtors' petitions and schedules;

h.  All affected federal, state and local regulatory and taxing authorities, including the Internal Revenue Service; and

i.  All entities known or reasonably believed to have expressed an interest in the Medallions.

(collectively, the "Notice Parties").

59.     Each Notice of Sale will advise the Notice Parties of the following: (a) the date, time and location of the Sale; (b) the Sale Terms, including that the Sale will be free and clear of all Liens; and (c) a reasonably specific description of the Medallions to be sold.

60.     The Trustee notes that Maltz Auctions intends to publish the Notice of Sale on its website and, as disclosed above, Maltz Auctions has or will market the Sales of the Medallions through electronic mail distribution lists, print and regular mail campaigns.

61.     The Trustee submits that the Notice of Sale as proposed substantially complies with Bankruptcy Rule 2002 and the M-383 Order, and constitutes good and adequate notice of the Sales. Therefore, the Trustee respectfully requests that the Court approve the proposed Notice of Sale.

## IV.    The Medallions Should Be Sold Free and Clear of Liens.

62.    Bankruptcy Code § 363 permits the sale of assets to be free and clear of liens, claims and interests of an entity in such property if: (a) applicable state law will permit the sale; (b) such entity consents; (c) the price at which the assets is being sold exceeds the liens, claims and interests; (d) the security interest in the Medallions is disputed; or (e) the entity with an interest in the asset being sold could be compelled in a legal or equitable proceeding to accept a money satisfaction of its interest in and to the Medallions. See 11 U.S.C. § 363(f).

63.    Here, there are several liens, claims and encumbrances asserted against each of the Medallions, including, those asserted by Citibank, TLC and New York State.

64.    Pursuant to the Stipulation, Citibank consented to the Trustee's sale of the Medallions in accordance with Bankruptcy Code § 363, free and clear of any and all Liens or adverse claims to title, of whatever kind or nature, with such Liens, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the Filing Date. Specifically, any Liens of Citibank, the TLC and New York State shall attach to the proceeds of sale in such order and priority as they existed immediately prior to the Filing Date.

65.    Based on the foregoing, the Trustee believes that he will be able to satisfy to requirements of Bankruptcy Code § 363(f).

## V.    The Trustee Should Be Granted Related Relief.

66.    Pursuant to Bankruptcy Rule 6004(h), all orders authorizing the sale of property pursuant to Bankruptcy Code § 363 are automatically stayed for fourteen (14) days after entry of the order, unless otherwise ordered by the Court. FED. R. BANKR. P. 6004(h). The stay period is intended to provide sufficient time for an objecting party to appeal before the order is implemented. See Advisory Committee Notes to FED. R. BANKR. P. 6004(h).

67.    Although little guidance is provided by either Bankruptcy Rule 6004(h) or the Advisory Committee Notes as to when a court should "order otherwise", it has been suggested that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." See 10 COLLIER ON BANKRUPTCY § 6004.09 (Lawrence P. King, et al. eds, 15th ed. rev. rel. 2003). Colliers also proposes that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay pending such appeal. Id.

68.    Here, the Trustee respectfully requests that the Court waive the 14-day stay period required under Bankruptcy Rule 6004(h). This relief is both necessary and appropriate under the circumstances of this case given the nature of the assets to be sold and the proposed Notice of Sale procedures set forth herein. Indeed, in the event the Motion is approved, the Trustee intends to proceed with its marketing campaign in connection with the Sale(s) immediately upon entry of the Sale Procedures Order.

69.    Pursuant to the M-383 Order, the Trustee is required to highlight any "extraordinary provisions" in a separate section of a motion seeking to sell estate assets. The Trustee submits that there are no "extraordinary provisions" with respect to the proposed Sale(s) of the Medallions that have not otherwise been highlighted herein.

## NOTICE AND NO PRIOR REQUEST

70.    The Trustee, through counsel, will submit an affirmation pursuant to Bankruptcy Rule 9077 in support of the request to schedule a hearing on shortened notice filed contemporaneously herewith.

17

71.    No previous request for the relief sought herein has been made by the Trustee to this or any other Court.

**WHEREFORE** the Trustee respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: July 10, 2017
   Wantagh, New York

         **LaMONICA HERBST & MANISCALCO, LLP**
         Counsel to Gregory M. Messer, Chapter 7 Trustee

      By:  *s/ Gary F. Herbst*
         Gary F. Herbst, Esq.
         Jacqulyn S. Loftin, Esq.
         3305 Jerusalem Avenue, Suite 201
         Wantagh, New York 11793
         Telephone: 516.826.6500

*M:\Documents\Company\Cases\Hypnotic Taxi LLC\Sale of Medallions\Sale Motion.docx*