**LaMonica Herbst & Maniscalco, LLP**
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Gary F. Herbst, Esq.
Jacqulyn S. Loftin, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                      Chapter 7

HYPNOTIC TAXI LLC, *et al.*,                                Case No.: 15-43300 (CEC)
                                                            (Jointly Administered)

                        Debtors.
------------------------------------------------------------x

### STIPULATION APPROVING THE CARVE OUT FROM THE SALE OF THE DEBTORS' MEDALLIONS FOR THE BENEFIT OF THE ESTATES AND THEIR CREDITORS

This stipulation (the "Stipulation") is made by and between Gregory Messer, the Chapter 7 Trustee (the "Trustee") of the jointly administered estates of Hypnotic Taxi LLC, Bombshell Taxi LLC, Bourbon Taxi LLC, Butterfly Taxi LLC, Candy Apple Taxi LLC, Chianti Taxi LLC, Chopard Taxi Inc., Cupcake Taxi LLC, Dorit Transit Inc., France Taxi LLC, Hennessey Taxi Inc., Iceberg Taxi Inc., Marseille Taxi LLC, Merlot Taxi LLC, Milkyway Cab Corp., Palermo Taxi Inc., Pinot Noir Taxi LLC, Pointer Taxi LLC, Pudding Taxi Inc., Stoli Taxi Inc., Vodka Taxi LLC, and VSOP Taxi Inc. (collectively the "Debtors"), and  Citibank N.A. ("Citibank", along with the Trustee are collectively referred to as the "Parties"), by and through their counsels.

### RECITALS

A.       On July 22, 2015 (the "Filing Date"), the Debtors each filed separate voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court, Eastern District of New York (the "Bankruptcy Court").

B.      By Order dated August 10, 2015 [Dkt No. 26], the Debtors' cases were jointly administered under Hypnotic Taxi LLC [Case No. 15-43300-CEC].

C.      On September 24, 2015, the United States Trustee filed an amended appointment of the Official Committee of Unsecured Creditors in the Debtors' cases [Dkt No. 64].

D.      By Order dated September 22, 2016 [Dkt. No. 368], the Debtors' cases were converted to ones under Chapter 7 of the Bankruptcy Code.

E.      By Notice of Appointment dated September 23, 2016 [Dkt. No. 370], Gregory Messer was appointed as the interim Chapter 7 Trustee of the Debtors' estates, has since duly qualified and is the permanent Chapter 7 Trustee administering the Debtors' estates.

F.      By Order dated October 28, 2016 [Dkt. No. 392], the Court authorized the Trustee to operate the Debtors' business and approved the former management agreements with the former managers, Downtown Taxi Management, LLC, Woodside Management, Inc. and Tunnel Taxi Management, LLC (the "Former Managers"), which were later terminated.

G.      By Order dated December 29, 2016, the Trustee was authorized to continue to operate the Debtors' business until April 30, 2017 and was also authorized to enter into a new management agreement with NYC Taxi Group LLC (the "721 Order") [Dkt. No. 449].

H.      Prior to May 31, 2017, there was $198,723.42 in the aggregate in the Debtors' estates, derived from, among other things, the operation of the Debtors' business (the "Original Estates' Funds").

I.      On May 31, 2017, in accordance with the Court's Order entered on May 30, 2017, the Trustee paid to the TLC an aggregate amount of $23,100.00 to renew the licenses of 14 of the Debtors' Medallions (the "Renewal Fee").

J.      As of June 22, 2017, there remains $175,623.42 in the aggregate in the Debtors' estates (the "Estates' Funds").

K.      Each of the Debtors own either two or three New York City taxi medallions (the "Medallions") issued by the New York City Taxi and Limousine Commission ("TLC").

L.      The Debtors collectively own forty-six (46) Medallions.

M.      According to the Debtors' respective schedules the Debtors collectively own thirty-nine (39) taxi vehicles associated with the Medallions (the "Taxi Vehicles").

N.      Citibank is secured in and to the Debtors' Medallions, the proceeds from the operation of the Debtors' Medallions and causes of action relating thereto (the "Citibank Collateral").

O.      The Taxi Vehicles, which are property of the Debtors' estates, are not part of the Citibank Collateral and are not subject to any Citibank liens.

P.      Pursuant to an Order entered on February 3, 2017 [Dkt. No. 511], the Trustee settled the Former Managers interest in the following four Taxi Vehicles: i) 2015 Toyota, Vehicle Identification Number JTDZN3EU3FJ016248 titled in the name of Bourbon Taxi LLC; ii) 2012 Toyota, Vehicle Identification Number 5TDZK3DC2CS217557 titled in the name of Candy Apple Taxi LLC; iii) 2014 Nissan, Vehicle Identification Number 3N8CM0JT4EK702241 titled in the name of Dorit Transit Inc.; and iv) 2015 Toyota, Vehicle Identification Number JTDZN3EU9FJ027111 titled in the name of Pointer Taxi LLC for a settlement sum in the amount of $35,000 (the "Vehicle Proceeds").

Q.      The Vehicle Proceeds are property of the Debtors' estates and are not part of the Citibank Collateral.

R.    The Trustee is prepared to move forward with the sale of the Debtors' Medallions free and clear of all liens, claims and encumbrances (the "Liens") pursuant to Bankruptcy Code § 363(b), (f) and (m) (the "Sale").

S.    Citibank and the Trustee have negotiated a carve-out from the proceeds from the Citibank Collateral as set forth herein.

## TERMS AND CONDITIONS

1.    This Stipulation is subject to approval of the Bankruptcy Court and shall become effective on the date the Court enters an Order approving this Stipulation. Nothing herein shall constitute an admission, waiver of rights or any other undertaking by the Parties unless and until this Stipulation becomes effective.

2.    The Debtors' estates shall retain the Estates' Funds, and the amount of the Original Estates' Funds shall be credited to, and applied against, the Cap (defined below).

3.    The Renewal Fee shall be reimbursed to the respective 14 Debtor estates by Citibank from the first proceeds of Sale of the Medallions.

4.    Subject to the Cap, the Debtors' estates shall retain 5% from the Net Proceeds (defined below) of the Sale of the Medallions, which shall be applied to the Cap.  The balance of the Net Proceeds shall be distributed to Citibank (the "Citibank Sale Proceeds").

5.    Citibank shall have the right to credit bid at the Sale of Medallions, even if it does not submit a sealed bid prior thereto. If Citibank is the successful bidder at the Sale, then, notwithstanding the Terms of Sale, it shall only pay a 2% buyer's premium to the auctioneer.

6.    Any recoveries from causes of actions or claims pursued by the Trustee, on behalf of the Debtors' estates, against the Former Managers (the "Manager Recoveries"), shall be applied as follows: (i) fifty (50%) percent of the Manager Recoveries shall be retained by the

Debtors' estates and applied to the Cap; and (ii) fifty (50%) percent of the Manager Recoveries shall be retained by the Debtors' estates and shall be deemed unencumbered assets of the estates and not applied against the Cap. After the Cap has been reached, the Debtors' estates shall retain fifty (50%) percent of the Manager Recoveries and Citibank shall receive fifty (50%) percent of the Manager Recoveries.

7.      Except as set forth in paragraphs 3 and 6 above, the maximum aggregate amount to be received by the Debtors' estates from Citibank's Collateral shall be $1,000,000.00 (the "Cap"). The Trustee hereby expressly waives the right to seek any recovery from Citibank or the Citibank Collateral under Bankruptcy Code § 506(c), other than as expressly authorized herein.

8.      The Vehicles Proceeds and any proceeds from the sale or transfer of the Taxi Vehicles shall be deemed property of the Debtors' estates and are not subject to, and shall not be applied against, the Cap.

9.      From the gross proceeds of the Sale of the Medallions (including cash and credit bids), the Trustee shall first pay any amount required to be paid to the holders of senior Liens in the Medallions (if any), or to the TLC, New York State or any other party or entity for Liens, taxes, fees or penalties, but only to the extent that the transfer of the Medallions cannot be accomplished unless such payments are made (the "Transfer Costs"). The funds that remain after the payment of the Transfer Costs shall be referred to as the "Net Proceeds".

10.     The Trustee is authorized to pay the Transfer Costs without further Order of the Court. At least seven (7) days prior to paying any Transfer Costs, the Trustee shall  provide written notice to Citibank (by email to Citibank's counsel) of the amount and precise description of the Transfer Costs the Trustee proposes to pay,  to whom the Transfer Costs must be paid and documents evidencing/supporting the Transfer Costs.

11.     Other than the payments set forth herein, there shall be no other payments made by the Trustee out of the Net Proceeds without the prior written consent of Citibank.

12.     In the event the successful bidder(s) at the Sale(s) fail(s) to close and forfeit(s) the amounts paid for a deposit and for a buyer's premium (collectively, the "Forfeited Amounts"), the Trustee shall remit the Forfeited Amounts to Citibank within ten (10) days after declaring the successful bidder in default.

13.     The Trustee is authorized to remit to Citibank the Citibank Sale Proceeds and Citibank's portion from the Manager Recoveries without further Order of the Court. Citibank shall retain a general unsecured claim against the Debtors' estates for any amount of its secured claims that remains unpaid.

14.     The Trustee is authorized to apportion any recoveries from Manager Recoveries equally between the Debtors' estates.

15.     Any other recoveries by the Debtors' estates, other than the Manager Recoveries set forth in paragraph 6 above (the "Other Recoveries"), shall not be applied to the Cap and are not part of the Citibank Collateral.

16.     This Stipulation supersedes any and all other prior oral or written agreements between the Parties with respect to the subject matter set forth herein, and shall be binding and inure to the benefit of the parties, their legal representatives, assigns, parents, subsidiaries, successors, estate, heirs, and all others who succeed to their rights.

17.     No variations or modifications of this Stipulation shall be deemed valid unless reduced to writing and signed by the Parties.

18.     This Stipulation shall be deemed to have been made in the State of New York, and the validity, interpretation, and performance of this Stipulation shall be governed by and

construed in accordance with the internal laws of the State of New York, without giving effect to any other conflict of law principle. In the event that any one or more of the provisions of this Stipulation shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity shall not affect any other provision herein. The Bankruptcy Court shall retain sole jurisdiction to resolve any disputes as to this Stipulation and to enforce or interpret any and all provisions of this Stipulation.

19.     Each signatory hereto represents and warrants that it has full power and authority to execute and deliver this Stipulation on behalf of the Parties and to perform the obligations hereunder.  This Stipulation is the valid and legally binding obligation of the parties, enforceable in accordance with its terms and conditions.

20.     This Stipulation may be executed by the parties in one or more counterparts, and may be executed on electronically transmitted copies, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

[Intentionally Left Blank]

21.     This Stipulation shall have no force and effect unless it is approved by the Bankruptcy Court. Should the Bankruptcy Court fail to approve this Stipulation, none of the provisions herein shall be deemed to be admissions or be prejudicial or impair any of the rights or remedies of the parties.

Dated: July 11, 2017
        Wantagh, New York      **LaMONICA HERBST & MANISCALCO, LLP**
                                      Counsel to Gregory M. Messer, as Chapter 7 Trustee

                  By:    *s/ Jacqulyn S. Loftin*
                            Gary F. Herbst, Esq.
                            Jacqulyn S. Loftin, Esq.
                            3305 Jerusalem Avenue
                            Wantagh, New York 11793
                            Telephone: 516.826.6500

Dated: July 11, 2017
        New York, New York     **ZEICHNER ELLMAN & KRAUSE LLP**
                                        Counsel to Citibank N.A.

                  By:    *s/ Nathan Schwed*
                            Nathan Schwed, Esq.
                            Jantra Van Roy, Esq.
                            1211 Avenue of the Americas, 40th Floor
                            New York, New York 10036
                            Telephone: 212.223.0400